**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**NATIONAL STUDENT MARKETING CORPORATION et al.,**
Defendants.

**Civ. A. No. 225–72.**

**(M.D.L. Docket No. 105).**

United States District Court,
District of Columbia.

March 18, 1975.

Theodore Sonde, Washington, D.C., for plaintiff.

Arnold & Porter, Daniel A. Rezneck, Abe Krash, Washington, D.C., for defendants White & Case and Marion J. Epley, III.

Cahill, Gordon & Reindel, Mathias E. Mone, William E. Hegarty, New York City for defendants Peat, Marwick, Mitchell & Co., and others.

Hogan & Hartson, James A. Hourihan, Dennis Whittlesey, Washington, D. C., for defendants Lord, Bissell and Brook, and others.

Purcell & Nelson, William E. Gressman, Franklin M. Schultz, Washington, D. C., for defendant James F. Joy.

## MEMORANDUM OPINION

PARKER, District Judge.

At the present stage of this securities fraud litigation, one of the most controversial procedural issues which the Court is again called upon to review involves the "Fifteenth Defense". The substance of this defense is that the Securities and Exchange Commission (SEC or Commission) violated its rules and procedures by failing to advise the defendants of their potential liability and their right to present their views to the Commission. There is no dispute that the defendants were not given such advice. Invoked initially by the defendants White & Case and Epley and later adopted by Peat, Marwick, Mitchell & Co.; Lord, Bissell & Brook and other defendants, the Fifteenth Defense challenges the good faith and indeed the authority of the Commission to initiate this litigation allegedly brought in violation of its rules. Dismissal of the complaint is sought.

When the issue was first presented, following exhaustive briefing and oral argument, the Court on August 23, 1974 in an unpublished memorandum opinion granted the motion of the Commission to strike the Fifteenth Defense asserted by White & Case and denied the motions of the other defendants for leave to amend their answers to include this affirmative defense.

The "rule" in question is based on a September 1, 1970 unpublished memorandum (the 1970 directive) from the Commission to its supervisory staff.[1] The last paragraph of the memorandum provides:

In regard to both administrative proceedings and injunctive actions, the Commission requests that the staff's memoranda to the Commission recommending the particular action set forth separately any arguments or contentions as to either the facts or the law involved in the case which have been advanced by the prospective respondents and which countervail those made by the staff in its memoranda as a basis for the recommendation.

In the August 23 opinion, this Court found that if the 1970 directive was a rule, it was designed primarily to provide information for the benefit of the agency and not to protect the procedural rights of those subject to the agency's power, and as such, the violation of the rule did not provide a basis for invalidating the agency action.

Immediately following that ruling, the affected defendants filed motions to reconsider contending that "the Court had made factual determinations concerning the intent, purpose and reason for the 1970 memorandum which could not be resolved by the pleadings and that the defendants, through discovery, should be permitted to develop a record under the circumstances."[2] On October 29, 1974, the motions for reconsideration were granted, the earlier order was vacated, and the motion of the SEC to strike the Fifteenth Defense was denied without prejudice to renew. The mo-

---

1. The full text of the memorandum is set forth in Appendix A.

2. Summary of defendants' arguments from October 29, 1974 order, described below.

tions of the other defendants to amend their answers to include the Fifteenth Defense were granted. Also, later denied were motions of the Commission for certification of the issue to the Court of Appeals and for a stay of that ruling pending an interlocutory appeal.

The defendants then embarked on a broad-ranging request for the production of documents relating to: the promulgation of the 1970 directive; possible notification of the defendants in this case; inquiries from persons outside the Commission concerning pre-proceeding notification; recommendations of the Wells Committee (Advisory Committee on Enforcement Policies and Practices of the SEC); and discussions of Securities Act Release No. 5310 ("Procedures Relating to the Commencement of Enforcement Proceedings and Termination of Staff Investigations"). The request for documents covered a time period from several years before the 1970 directive to well beyond the time the suit was filed in early 1972. The SEC responded by moving for a protective order and renewing its motion to strike the defense. While it produced the official Commission minute [3] which approved circulation among the staff of the 1970 directive, it resisted discovery of 67 other items which were indexed, described and submitted for *in camera* review by the Court.[4]

Discovery of the items was resisted by the SEC on the grounds that; (1) the October 29th Order limited the defendants' legitimate discovery requests to documents illuminating the Commission's intent, purpose and reason for issuing the 1970 directive; (2) the only documents which could provide such illumination were those issued by the Commission itself, and not those prepared by

individual Commissioners or staff members; (3) internal memoranda of the Commission were immune from discovery by reason of the governmental privilege attaching to intra-agency memoranda containing advice, opinions, evaluations and recommendations, absent a showing of compelling need; (4) courts should not permit a party to utilize the judicial process to inquire into the mental impressions of individual decisionmakers in an agency without a prima facie showing of improper action or bad faith in the decision-making process.

The Commission has also renewed its motion to strike the Fifteenth Defense and relies upon an affidavit of its secretary which states in part that the 1970 directive was *not* "a rule, procedure or directive requiring its staff, during the course of a Commission investigation and prior to the institution of an enforcement action . . ., to inform a person that he is a prospective defendant or target or to solicit the submission of views or contentions of any person as to why he should not be sued by the Commission." The affidavit further alleges that the directive was an "instructional memorand[um] . . . intended to improve efficiency in the administration of [the Commission's] regulatory and enforcement functions" and was not intended "to confer any rights or entitlements upon any person."[5] An earlier argument was also reasserted —that since the directive was not made public, there could have been no reliance on it by defendants.

In seeking to compel production of the requested documents, the defendants argue that: (1) the self-serving affidavit prepared by the Commission five years after the 1970 directive cannot substitute for the discovery sought

---

3. Attached as Appendix B.

4. The Commission has represented that after diligent search these are the only items found in their files relating to the subject and should others be found they will be brought to the Court's attention. The list of 67

items was made available to the defendants and is attached as Appendix C.

5. Affidavit of George A. Fitzsimmons, Secretary of the Securities and Exchange Commission, January 8, 1975.

by defendants; (2) the Court, not the SEC, must determine questions of relevance; (3) the SEC's own description of its documents impels the conclusion that they are relevant; and (4) that the cases relied upon by the Commission deal with the exemption for intra-agency memoranda under the Freedom of Information Act, but do not provide a standard for disclosure under the Federal Rules of Civil Procedure.

## I. DISCOVERY OF COMMISSION DOCUMENTS

■ In granting the defendants' motions for reconsideration the Court was concerned with their expressed need for discovery to develop the facts concerning the Commission's intent, reason and purpose in issuing the 1970 directive. Defendants now seek an order requiring the production of certain documents in pursuit of such facts. After an *in camera* review of these documents, this Court concludes that they are protected from disclosure by reason of the privilege for internal governmental memoranda containing advice or opinions. The defendants' needs are not overriding because none of the requested documents is relevant to the intent behind the 1970 directive.

*Intent of the Securities and Exchange Commission*

■ The intent of a governmental agency, such as the Securities and Exchange Commission, is a rather limited concept which cannot be determined from a random search of documents authored by agency staff or individual Commissioners. The SEC consists of five appointed Commissioners who are assisted by staff members. While Commissioners may in fact respect the staff's recommendations, they are not bound by them nor do such recommendations necessarily reflect the position of the agency itself on any given topic. Similarly, the views of an individual Commissioner will not invariably reflect the position of the agency as a whole. The great bulk of the documents requested by defendants are not "Commission-authored" but rather, they consist, with few exceptions, of memoranda among individual Commissioners, their legal assistants and the Commission staff. Therefore, they are of little, if any, value and cannot be considered as an official expression of the will and the intent of the Commission.

The Court of Appeals for this Circuit has looked askance at requests for internal staff memoranda to determine deliberative processes which lead to the ultimate action of an agency. In *Sterling Drug, Inc. v. Federal Trade Commission*, 450 F.2d 698 (D.C.Cir. 1971), discovery of internal agency documents was denied in a Freedom of Information Act case. Judge Tamm reasoned that the materials prepared by agency employees "were probably filtered and refined by the Commission, with the result that its ultimate decision was something more than, or at least different from, the sum of its 'parts.' " *Id.,* 450 F.2d at 706. And in the interest of encouraging the free flow of ideas between staff and Commissioners, the Appellate Court refused to order disclosure of these possibly misleading internal governmental documents.

■ The reasoning in *Sterling Drug* is consistent with a Second Circuit ruling in *International Paper Co. v. Federal Power Commission*, 438 F.2d 1349 (2d Cir. 1971). Once again, staff recommendations regarding a final agency determination were not required to be disclosed under the Freedom of Information Act. The Second Circuit went on to imply, moreover, that the rules for exempting intra-agency material under the FOIA are identical to those applicable to discovery in civil suits under the Federal Rules of Civil Procedure. *Id.,* 438 F.2d at 1358. Thus, the defendants' requested discovery of non-Commission-authored documents for the express purpose of ascertaining the Commission's

reasons for taking a certain action, should be denied.

*Analysis of the Commission Documents*

This conclusion is reinforced by an *in camera* examination of the requested documents, and an explanation of the Court's findings as to relevancy is appropriate. *Cf. Schwartz v. Internal Revenue Service,* 511 F.2d 1303 (D.C. Cir., 1975).

Of the non-Commission-authored items which chronologically precede the 1970 directive (documents 10–23), only numbers 10, 14 and 23 mention the general topic of allowing potential defendants to present their position before suit is instituted, but none purports to give the reason for the adoption of the 1970 directive. Also, the drafts of the 1970 directive (documents 3–6) do not contain any interpretive material.

Documents 24 through 42 deal with the formation of, and recommendations to the Wells Committee, an independent panel appointed by the Commission on January 27, 1972 to review the SEC's practices and procedures.[6] None of these documents deal with the 1970 directive as if it established a general rule. On the contrary, they discuss the advisability of the *adoption* of the very rule which the defendants contend was already established by the 1970 directive.

Documents 42–52, 54 and 59 are comments by SEC staff or Commissioners on the Wells Committee recommendations. They are not only irrelevant to the *intent* behind the 1970 directive, but they too indicate that there was no previous rule of the type suggested by the proffered defense.

Documents 53 and 55–58 are drafts of Securities Act Release No. 5310, which was issued on September 27, 1972[7] in response to the suggestions of the Wells Committee.[8] The Release stated that it would remain a matter of staff discretion whether to notify potential defendants of their status as targets of the investigation and of their right to present their views. These drafts contain no material deviations from the final version and none deals with the issue of whether there was a 1970 rule that defendants should be notified before the commencement of suit. The Release states that the Wells Committee objectives should be achieved "on a strictly informal basis in accordance with procedures which are now generally in effect." This implies *not* that there was a previously established rule, but that there existed *informal* procedures which were to be continued.

6. Of the recommendations made by the Wells Committee, only the following are relevant to the Fifteenth Defense:

> 7. The conduct of an investigation should remain within the control of the Commission; where circumstances permit, however, the Commission should as a general practice give a party against whom the staff proposes to recommend proceedings an opportunity to present his own version of the facts by affidavit or testimony under oath.
>
> 16. Except where the nature of the case precludes, a prospective defendant or respondent should be notified of the substance of the staff's charges and probable recommendations in advance of the submission of the staff memorandum to the Commission recommending the commencement of an enforcement action and be accorded an opportunity to submit a written statement

to the staff which would be forwarded to the Commission together with the staff memorandum.

> 17. The procedures whereby a prospective defendant or respondent is permitted to present to the Commission his side of the case prior to authorization of an enforcement action should be reflected in a rule or published release.

Report of the Advisory Committee on Enforcement Policies and Practices (Wells Committee), Securities and Exchange Commission, June 1, 1972, "Summary of Recommendations" at i and iv.

7. [1972–73 Transfer Binder] CCH Fed.Sec. L.Rep. ¶ 79,010 at 82,183–86 (September 27, 1972).

8. See recommendations quoted in note 6, *supra.*

Document 59 is a proposed release containing the text of what is now 17 C.F.R. § 202.5(c) and (d). None of the material surrounding the text of the published regulations is relevant to whether or not defendants had a right to be notified under the 1970 directive. Document 61 deals with an irrelevant portion of the 1970 directive and document 62 is a memorandum on housekeeping matters and contains nothing of relevance.

Documents 63 through 67 are 1974 memoranda discussing whether witnesses should automatically be informed of the right to make written submissions to the Commission and the advisability of putting a "reminder" of this right on all formal Orders of Investigation. This discussion, in 1974, is a clear indication that the notification issue was unresolved by the Commission, thus contradicting the defendants' contention that the SEC violated its own notification rule when this litigation was initiated in 1972.

The remaining Commission-authored documents are irrelevant to the Fifteenth Defense. Documents 1 and 2 are memoranda to the staff. They post-date the 1970 directive by several years and make no reference to it or to past procedures. Document 7 contains a reference to that part of the 1970 directive dealing with negotiating settlements, and is irrelevant to the pending issue. Documents 8 and 9 are SEC Minutes which approve Securities Act Release No. 5310 and the amendment to 17 C.F.R. § 202.5 (c). Neither contains any interpretive content.

*Adversary Proceedings versus In Camera Review*

■ Defendants have cited *Kolod v. United States,* 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968), and *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), for the proposition that the Court must give them access to the disputed documents in order that they determine their relevancy to the Fifteenth Defense. This argument is rejected. The Court does not consider the two cases as controlling and feels that it is fully justified in determining the issue of relevancy on the basis of *in camera* inspection alone.

The defendants point to language in the *Alderman* opinion asserting the superiority of adversary, as opposed to *in camera,* proceedings in resolving issues on the basis of "a large volume of factual materials" where defense counsel may be in the best position to sort out the "many and subtle interrelationships which may exist among the facts reflected by these records." *Alderman, supra,* 394 U.S. at 183–84, 89 S.Ct. at 972. A closer reading of the opinion, however, reveals that this language would be applicable only in certain limited factual situations.

In *Alderman,* it was learned following defendants' convictions that their place of business had been subjected to illegal electronic surveillance by the government. The Supreme Court directed that the transcripts of the illegal wiretaps be turned over to the defendants without *in camera inspection* in order to determine if any of the evidence used in the trial was tainted by the illegal tap. In that situation, it was clear to the Supreme Court that the derivation of evidence from the wiretaps was a complex issue which might depend on reference to factual materials which were not in the record but were known to the defendant and his counsel.

A brief survey of cases subsequent to *Alderman* shows that its holding has been generally limited to its facts. Courts have held that the trial court may examine wiretap transcripts *in camera* to determine: (1) if the surveillance

was actually illegal,[9] and (2) if the defendant has standing to challenge the wiretap.[10] In non-wiretap cases, Circuit Courts have approved *in camera* examination of privileged documents to determine their relevancy to certain defenses. For instance, in a prosecution for making false statements in a subcontract, defendants sought discovery of the classified portions of the prime contract. The trial judge reviewed the documents *in camera* and refused to disclose them because there was nothing exculpatory or relevant to the defense. The Eighth Circuit affirmed, expressly rejecting the defendant's reliance on *Alderman*. *United States v. Bass*, 472 F.2d 207 (8th Cir. 1973).[11]

In this proceeding the facts are quite different from *Alderman*. Here the issue is whether documents relate to the "intent, purpose or reason" for the 1970 directive. The documents are hardly voluminous or complex. Unlike the *Alderman* situation, where the transcripts involved the defendant's own conversations, none of the SEC internal papers submitted directly relate to the individual defendants' activities. Defense counsel are in no better position than the Court to determine the relevancy issue. Moreover, this Court does not wish to inhibit discussions in a government agency by disclosing documents for the sake of adversary proceedings which would add little or nothing to the Court's evaluation of these documents. The defendants have failed to demonstrate the type of compelling need for disclosure that was apparent in the unusual circumstances of the *Aldeman* case.

## II. SEC VIOLATION OF INTERNAL PROCEDURES

In the August 23 memorandum opinion, this Court found that *if* there was a mandatory procedure established by the 1970 directive, the "rule" in question was not of the type which required a dismissal if violated by the agency. The October 29 order, however, called for a reconsideration of these issues and reopened discovery. The subsequent memoranda of the parties, the Commission affidavit together with the documents presented for *in camera* review and the recent oral presentation of counsel have, in the Court's judgment, produced a harvest of facts and legal arguments so that the Fifteenth Defense issue may now be finally decided.

█ It is concluded that the pivotal paragraph of the 1970 directive did not declare a rule but merely provided a suggestion to the SEC staff that, if available, opposing viewpoints be made known to the Commission. Noncompliance with a totally discretionary procedure cannot justify dismissal and the asserted defense is insufficient as a matter of law.

The language of the 1970 directive does not mandate or direct the Commission staff to advise or notify a person that he is a potential target defendant in an injunctive action or that his views be solicited. The Commission "requests" that staff memoranda "set forth separately any argument or contentions as to either the facts or the law involved in the case which have been advanced by the prospective respondents and which countervail those made by the staff. . . ." Defendants would have

---

9. *See:* U. S. v. Brown, 484 F.2d 418 (5th Cir. 1973) ; U. S. v. Cook, 432 F.2d 1093 (7th Cir. 1970).

10. *See:* Taglianetti v. U. S., 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969) ; Jones v. U. S., 443 F.2d 822 (9th Cir. 1971) ; U. S. v. Fannon, 435 F.2d 364 (7th Cir. 1970).

11. *See also* Pollard v. United States, 441 F.2d 566 (7th Cir. 1971) (*in camera* examination of grand jury testimony of co-defendant, found non-exculpatory, disclosure denied).

the Court interpret this sentence to *require* that the staff notify potential defendants of their status as targets of the investigation, and of their right to make written submissions to the Commission. This proposed interpretation, however, is somewhat strained. The directive is in the form of a "request", which indicates that the staff retains some discretion. Furthermore, the directive asks only that "any argument . . . which have been advanced" be set forth. A natural reading of this phrase leads to the conclusion that if no arguments have been advanced, either voluntarily or upon request, then they need not be set forth. The language itself is not mandatory and does not imply a rule of practice.

Both the Wells Committee recommendations and Securities Act Release No. 5310 reinforce the implication of the 1970 directive that any existing practice of notifying potential defendants was purely discretionary. As previously noted, the Wells Committee recommended that a pre-proceeding notification rule be adopted formally [12] (which contraindicates the prior existence of such a rule). Similarly, Release No. 5310 referred to "procedures which are now generally in effect" as being "on a strictly informal basis".[13]

Finally, the Commission's affidavit states unequivocally that there was no SEC rule such as the one alleged in the Fifteenth Defense. Although the Court does not rely on the affidavit by itself, the agency's own interpretation of the directive is entitled to some weight.[14] When combined with the other factors which negate the existence of a rule, the affidavit becomes persuasive.

Case law on an analogous IRS regulation concerning preindictment confer-ences between staff and potential defendants reinforces the conclusion that the Fifteenth Defense must fall. In *United States v. Goldstein*, 342 F.Supp 661 (E.D.N.Y.1972), Judge Judd refused to dismiss an indictment where the defendant had not been given an opportunity to participate in such a conference. The regulation in question provided that

"Every person who may be the subject of a recommendation for prosecution shall be given an opportunity to explain his participation in the alleged criminal violation prior to the submission of the case to Regional Counsel, unless compelling reasons exist to the contrary." Quoted in *Goldstein, supra*, 342 F.Supp. at 665.

A non-public portion of the Internal Revenue Manual, however, directed employees to make disclosures to taxpayers at preindictment conferences only if it would be consistent with government interests to do so. The court inferred from these two provisions that there was no obligation to hold a conference if it was not in the government's interest to make any disclosure.[15]

The 1970 directive contains as much discretionary language as the IRS regulation. Furthermore, the SEC procedure was contained in an unpublished directive to the staff. In discussing an unpublished IRS provision concerning taxpayer conferences with the Chief Counsel's Office, Judge Judd stated:

It cannot be said that a taxpayer relies on the internal procedures of IRS, even if they have become known to private tax attorneys, . . . and it is unlikely that the taxpayer's actions would have been affected by the right to explain them in a conference. *Goldstein, supra*, 342 F.Supp. at 666.

---

12. *See* note 6, *supra*.

13. *See* note 7, *supra*.

14. *See* Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) and cases cited therein; *see also* Nazareno v.

Attorney General, 512 F.2d 936 (D.C.Cir. 1975).

15. *Accord*, Short v. Murphy, 368 F.Supp. 591 (E.D.Mich.1973).

Judge Judd specifically distinguished *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1970), and *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970). In these cases defendants' rights at trial were affected by the use of statements obtained in violation of a published IRS rule. In the pre-indictment conference situation, however, the potential defendant is not denied due process because he will have his full day in court without the use of possibly tainted evidence. Similarly, in this case, the defendants will have their chance to vindicate themselves in the trial on the merits.

In our August 23 opinion, this Court made the assumption that the 1970 directive was a regulation, but that since it was not designed to protect individual rights, there was no need to dismiss the action on the ground that the rule had been violated. Since it is now apparent to the Court that the 1970 directive did not constitute a rule, a discussion of whether the 1970 directive was for the benefit of potential defendants or was aimed at promoting agency efficiency, is beside the point.

Based on the foregoing, the Court grants the motion of plaintiff, Securities and Exchange Commission, for a protective order; denies the motions of the defendants to compel the production of documents; and grants the renewed motion of the Securities and Exchange Commission to strike the Fifteenth Defense, and similar defenses asserted by the other defendants.

Accordingly it is this 18th day of March, 1975,

Ordered that the plaintiff Securities and Exchange Commission need not produce for the defendants any of the documents which were submitted for *in camera* review; and further

Ordered that the motions of defendants White & Case and Marion Jay Epley III, Lord, Bissell & Brook, Meyer and Schauer, Peat, Marwick, Mitchell & Co., Natelli and Scansaroli, to compel production of documents, be and hereby are denied; and further

Ordered that the Fifteenth Defense asserted by defendants White & Case and Marion Jay Epley III and the similar defenses asserted by the other defendants be, and they hereby are, stricken from their answers.

## APPENDIX A

### MEMORANDUM

September 1, 1970

TO:    All Division Directors and Office Heads
FROM:  The Commission
RE:    Procedures Followed in the Institution of Enforcement Proceedings

The Commission has considered the procedures currently followed in the institution of enforcement proceedings, both administrative proceedings and injunctive actions. The Commission has determined that the staff should adopt the following procedures in presenting its recommendations for enforcement actions to the Commission:

In regard to administrative proceedings:

(1) Offers of settlement should not be negotiated prior to the time the staff presents its recommendation for administrative proceedings to the Commission. The staff should present its recommendations to the Commission as soon as possible after concluding its investigation or inquiry in the particular case.

(2) Before proceedings are recommended to the Commission, if the probable respondents desire to discuss settlement with the staff prior to the conclusion of the staff's investigation or inquiry, the staff should afford the parties involved an opportunity to present their proposals and arguments. The staff may, of course, discuss the facts of the case with the parties and may indicate to them the nature of the violations which the staff believes have occurred. The staff should not, however, institute or suggest discussions of settlement or negotiate terms of settlement or indicate the particular recommendation the staff intends to make to the Commission, prior to the time the recommendation is submitted to the Commission.

(3) Where the statute allows, the Commission will ordinarily authorize private proceedings in order to avoid unnecessary publicity and to afford respondents in administrative proceedings time to discuss settlement with the staff after the proceedings are authorized, except in those cases that involve a need to alert public investors to continuing practices or acts which would operate as a fraud on such investors.

(4) After administrative proceedings have been authorized by the Commission, if a settlement is not reached in a reasonably short period of time, the case should proceed forthwith to a hearing.

In regard to injunctive actions:

(1) The staff should not negotiate consents to proposed injunctive actions prior to the time the Commission has authorized the bringing of the action. Recommendations for injunctive action should be presented to the Commission as soon as possible after the staff has concluded its investigation or inquiry in the particular case.

(2) If the probable defendants to a proposed injunctive action wish to discuss consents with the staff prior to the time the Commission authorizes the action, the staff should afford the parties involved an opportunity to present their proposals and arguments. The staff may, of course, discuss the facts of the case with the parties and may indicate to them the nature of the violations which the staff believes have occurred. The staff should not, however, negotiate a consent or institute discussions relating to consents nor should it indicate the particular recommendation it intends to make to the Commission.

(3) If the Commission authorizes the action the complaint should be filed forthwith.

(4) If the defendants consent to all of the allegations and the relief prayed for in the complaint authorized by the Commission, it will not be necessary to submit the consent to the Commission for its approval. A consent which differs from the complaint should be submitted to the Commission for its approval.

In regard to both administrative proceedings and injunctive actions, the Commission requests that the staff's memoranda to the Commission recommending the particular action set forth separately any arguments or contentions as to either the facts or the law involved in the case which have advanced by the prospective respondents and which countervail those made by the staff in its memoranda as a basis for the recommendation.

## APPENDIX B

September 1, 1970

The Commission approved for printing and distribution to "All Division and Office Heads" its memorandum relating to procedures to be followed in the institution of enforcement proceedings, both administrative proceedings and injunctive actions. Commissioner Needham approved the memorandum, but disapproved inclusion of the last paragraph.

Commissioner Smith, who was absent, was recorded at his request as concurring in the Commission's action.

The meeting was adjourned at 11:00 A.M.

Orval L. DuBois
Secretary

By: Rosalie F. Schneider
Recording Secretary

## APPENDIX C

*Documents Issued by the Commission*

1.  Memorandum dated November 23, 1973 from the Commission to All Staff Personnel, re Calendar Practice.
2.  Memorandum dated April 1, 1974 from the Commission to All Staff Employees, re Guidelines for the Preparation of Staff Memorandums and Calendar Procedures, with exhibits. Exhibit No. 2 is a memorandum dated September 18, 1973 from the Office of the Secretary to All Division Directors and Regional Administrators, re preparation of staff memoranda to the Commission.
3.  Commission Minute of July 15, 1970 re Chart Service Institute and "proposed guidelines" to be followed by the staff in institution and settlement of administrative proceedings and injunctive actions.
4.  Undated draft memorandum from the Commission to All Division Directors and Office Heads, re procedures followed in the institution of enforcement proceedings.
5.  Commission Minute of August 18, 1970, re "proposed memorandum" from the Commission setting forth procedures to be followed by the staff in the institution and settlement of enforcement proceedings.
6.  Undated draft memorandum from the Commission to All Division Directors and Office Heads, re procedures followed in the institution and settlement of enforcement proceedings.
7.  Commission Minute of December 7, 1972, re settlement procedures in the September 1, 1970 Memorandum.
8.  Commission Minute of September 27, 1972 regarding Commission approval of issuance of Securities Act Release No. 5310 (September 27, 1972) entitled "Procedures Relating to the Com-

mencement of Enforcement Proceedings and Termination of Staff Investigations."

9. Commission Minute of October 11, 1972 regarding approval of issuance of Securities Act Release No. 5320 (October 12, 1972) entitled "Amendment of Part 202 of Title 17 of the Code of Federal Regulations Relating to Informal Enforcement Procedures." (The Minute erroneously refers to publication in Securities Act Release No. 7422).

Non-Commission-authored Documents Including Memoranda Prepared by Individual Commissioners, Their Legal Assistants and Commission Staff.

10. Memorandum, dated January 20, 1967 from the Legal Assistants to the Commission, re problems of fairness in adjudicatory proceedings.

11. Memorandum dated August 23, 1967 from Stanley Sporkin (Associate Director, Division of Trading & Markets) to all Regional Offices, re determination whether to recommend public or non-public administrative proceedings against broker-dealers or investment advisers.

12. (Three documents) (a) Memo routing ("buck") slip, dated June 24, 1970 from Leonard Helfenstein (Office of Opinions and Review) to the five individual Commissioners, attaching (b) Memorandum dated June 10, 1970 from Office of Opinions and Review to Commissioner Smith, re procedures relating to offers of settlement and waiver of initial decision, and (c) Memorandum dated May 20, 1969 from Office of Opinions and Review to Smith, re the question of "prejudgment" in connection with "segmented" proceedings.

13. Memorandum dated June 25, 1970 from Richard Seltzer (Legal Assistant to Commissioner Smith) to Smith, re settlement procedures.

14. Memorandum dated June 30, 1970 from Smith to the Commission, re administrative procedures.

15. Memorandum dated July 2, 1970 from David Ferber (Solicitor) to Smith, re Smith's June 30, 1970 memorandum.

16. Buck slip dated July 6, 1970 from Sporkin to Ferber, Alan Levenson (Director, Division of Corporation Finance) and Sol Freedman (Director, Division of Corporate Regulation), attaching proposed response to draft memorandum identified in Item 4, above.

17. Memorandum dated July 7, 1970 from Levenson to Sporkin, re response of Division of Corporation Finance to draft memorandum identified in Item 4 above, with handwritten notations of Sporkin and Irving Pollack (Director, Division of Trading and Markets).

18. Memorandum dated July 8, 1970 from Pollack to McCoy, re draft memorandum identified in Item 4 above.

19. (Two documents) (a) Memorandum dated July 23, 1970 from Division of Corporate Regulation to McCoy, re draft memoran-

dum identified in Item 4 above, attaching (b) draft memorandum on same subject prepared by that Division.

20. Memorandum dated August 4, 1970 from McCoy to Budge, re staff comments on draft memorandum identified in Item 4, above.

21. Memorandum dated August 13, 1970 from Seltzer to Legal Assistants, re offers of settlement.

22. (Four documents) (a) Undated memorandum from McCoy to Budge, re institution and settlement of enforcement proceedings, attaching (b) draft memorandum identified in Item 6, above, and (c) undated memorandum from Levenson to McCoy commenting on draft memorandum identified in Item 4, above, and (d) draft memorandum identified in Item 19(b) above.

23. Additional copies of documents identified in Item 22 above, with handwritten changes by McCoy.

24. Memorandum dated December 7, 1971 from Howard Kristol (Special Counsel to Chairman Casey) and Ferber, to the Commission, re scope of proposed review of Commission's practices and procedures.

25. Memorandum dated January 6, 1972 from Ronald F. Hunt (Commission Secretary) to All Division and Office Heads, re Commission meetings.

26. Memorandum dated January 19, 1972 from Casey to the Commission, the General Counsel and Directors of the Divisions of Trading and Markets, Corporate Regulation, and Corporation Finance, re matters to be examined by the Wells Committee.

27. Memorandum dated January 20, 1972 from Kristol (Staff Director to the Wells Committee) to Bradford Cook (General Counsel), Ferber, Pollack, Sporkin, Levenson and Freedman, re outline of possible topics for consideration by the Wells Committee.

28. Memorandum dated February 4, 1972 from Kristol to Freedman, Levenson, Pollack, Alex Brown (Administrator, Washington Regional Office), re request by Wells Committee for information.

29. Memorandum dated February 8, 1972 from Pollack to Kristol responding to information request of Wells Committee.

30. Memorandum dated February 14, 1972 from Richard Rowe (Assistant Director, Division of Corporation Finance) to all attorneys in Office of Administrative Proceedings and Investigations (the Office which conducted the NSMC investigation), re advising witnesses in private investigatory proceedings of opportunity to make statements for the record and to make submissions to Commission.

31. "Redraft" dated February 17, 1972, of comments to be submitted to Wells Committee by Division of Trading and Markets, re due process, prepared by Ira Pearce (Special Council, Division of Trading and Markets).

32. Memorandum dated February 23, 1972 from Kristol to Legal Assistants, re Wells Committee request for comments on enforcement policies.

33. Draft memorandum dated February 28, 1972 from Division of Trading and Markets to the Commission, re enforcement policies and practices, prepared by Pearce.

34. Undated draft memorandum from Division of Trading and Markets to Advisory Committee on Enforcement Policies and Practices (Wells Committee), re enforcement policies and practices, containing handwritten notations by Sporkin.

35. Undated draft memorandum from Division of Trading and Markets to the Wells Committee re enforcement policies and practices.

36. Memorandum dated March 9, 1972 from Division of Trading and Markets to Wells Committee re enforcement policies and practices.

37. Typewritten draft notes dated March 11, 1972, for the Wells Committee files, by M. F. Cohen (Committee member).

38. Memorandum dated March 20, 1972 from James Foster to all staff members, Division of Trading and Markets, re information and guidance on seven matters.

39. Memorandum dated March 23, 1972 from Kevin Duffy (Administrator, New York Regional Office) to Wells Committee members, re improved SEC enforcement procedures.

40. Memorandum dated March 27, 1972 from Hunt to Division and Office Heads, Regional Administrators, re memoranda to the Commission.

41. Revised pages 1–4 of Item 36 above, transmitted by buck slip to Wells Committee on March 30, 1972.

42. Synopsis of recommendations sent to Wells Committee, dated April 10, 1972, prepared by Kristol.

43. Undated schedule juxtaposing the recommendations of Wells Committee with suggested action to be taken on them, probably prepared by Kristol.

44. Handwritten Kristol notes dated June 14, 1972, re Commissioner Needham's comments on Wells Committee Report.

45. Undated typewritten notes, re Needham's comments on Wells Committee Report (author unidentified).

46. Memorandum dated June 15, 1972 from Commissioner Herlong to Casey commenting on Wells Committee recommendations.

47. Handwritten notes, dated June 19, 1972, of discussion during Commission meeting on Wells Committee Report, probably prepared by Kristol.

48. Memorandum dated June 23, 1972 from Sporkin to Casey commenting on Wells Committee recommendations.

49. Memorandum dated July 12, 1972 from Pearce to Sporkin, commenting on Wells Committee recommendations.

50. Memorandum, dated July 20, 1972 from Casey to Cook and Ferber, re implementation of Wells Committee recommendations.

51. Memorandum dated July 20, 1972 from Casey to Pollack and Sporkin re implementation of Wells Committee recommendations.

52. Memorandum dated July 27, 1972 from Gerald Boltz (Administrator, Los Angeles Regional Office) to Kristol commenting on Wells Committee recommendations.

53. Undated draft of Release No. 5310, probably prepared by Pearce.

54. Undated typewritten comments on Wells Committee recommendations, probably prepared by Kathryn McGrath (Legal Assistant to Commissioner Loomis), for Commissioner Loomis.

55. August 4, 1972 draft of Securities Act Release No. 5310, prepared by Pearce.

56. August 23, 1972 draft of Release No. 5310, probably prepared by Sporkin.

57. Memorandum dated August 24, 1972 from Sporkin to Casey enclosing draft of Release No. 5310.

58. September 20, 1972 draft of Release No. 5310, preparer unidentified.

59. Undated typewritten summary of "key" recommendations of Wells Committee and Commission action taken, preparer unidentified.

60. Memorandum dated October 6, 1972 from Kristol to the Commission, re amendment of Part 17, Code of Federal Regulations.

61. Memorandum dated December 4, 1972 from Division of Investment Company Regulation to the Commission, re settlement procedures in the September 1, 1970 Memorandum.

62. Memorandum dated November 29, 1973 from Office of the Secretary to All Division Directors, All Regional Administrators, re preparation of staff memoranda to the Commission.

63. Memorandum dated May 7, 1974 from Boltz to Sporkin (Director, Division of Enforcement), re Commission enforcement programs.

64. Memorandum dated November 19, 1974 from Commissioner Sommer to Sporkin re Commission rules regarding so-called Wells Committee submissions (see 17 CFR 202.5(c)).

65. Memorandum dated November 26, 1974 from Sporkin to Sommer giving initial response to memorandum identified in Item 64.

66. Memorandum dated November 29, 1974 from Theodore Sonde (Associate Director, Division of Enforcement) to Sporkin, re memorandum identified in Item 64.

67. Memorandum dated December 16, 1974 from Sporkin to Sommer, re memorandum identified in Item 64.