Richard M. HEWITT and Richard M. Hewitt, P.C., Appellants,

v.

Ronald D. BISCARO; Uriel Osorio; James A. Charrette; Cocoa Beach Holdings Inc., LLC; Judy Nichols; Michael Snow; Donna Jonas; and Bank of America, N.A., Executor of the Estate of Franklin H. Cole, Appellees.

No. 05–10–01011–CV.

Court of Appeals of Texas, Dallas.

Nov. 16, 2011.

Jeffrey S. Tolley, Adolfo Ruiz Rodriguez, Rodriguez Davis Ghorayeb & Gersch & Towns, P.C., Richard L. Yeager, III, Dallas, Richard M. Hewitt, Richard M. Hewitt, P.C., Trophy Club, for Appellants.

J. Mitchell Little, Scheef & Stone, L.L.P., Frisco, for Appellees.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellants Richard M. Hewitt (Hewitt) and Richard M. Hewitt, P.C. (Hewitt P.C.) appeal the trial court's summary judgment in favor of appellees Ronald D. Biscaro, Uriel Osorio, James A. Charrette, Cocoa Beach Holdings Inc., LLC, Judy Nichols, Michael Snow, Donna Jonas, and Bank of America, N.A., Executor of the Estate of Franklin H. Cole, on their claim of breach of a settlement agreement.[1] In two issues, appellants contend (1) the trial court erred in granting summary judgment in favor of appellees and (2) appellants raised a material issue of fact precluding summary judgment. We conclude the summary judgment was proper, and we affirm the trial court's judgment.

## Background

Appellees, investors in oil and gas drilling projects organized and sponsored by

---

1. Kathleen Ann Mulligan, Daniel Mulligan, The Kat Group, Inc., and Kedd Ranch, Inc. appealed the trial court's summary judgment. Those appellants filed a voluntary dismissal motion with this Court in which they stated they had settled their disputes with appellees. We granted their motion and dismissed their appeal.

certain defendants, sued appellants and other defendants for various claims, including violations of the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. art. 581–1 (West 2010). Appellant Hewitt was allegedly liable to appellees as a "control person" and appellants were allegedly liable to appellees as conspirators in the commission of fraud under the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. arts. 581–4(F), 581–33(F) (West 2010). Appellees allege appellants prepared private placement memoranda with knowledge of the defendants' illegal activity and enabled the defendants' fraud. Appellees also allege appellants committed theft and misapplied fiduciary property.

During the pendency of appellees' lawsuit, the defendants, including appellants, and appellees executed a "Settlement Agreement and Release" (settlement agreement). The settlement agreement provided that defendants pay appellees a total of $1,300,000 through a series of periodic payments. The settlement agreement also specified that its terms were to be kept confidential.

The defendants made settlement agreement payments totaling $400,000, but failed to make the fourth payment on or before its due date. After the defendants ceased making payment to appellees under the settlement agreement, appellees amended their pleadings to include a claim against the defendants for breach of the settlement agreement. Appellees sought the remaining amount of $900,000 payable under the settlement agreement as damages and their attorney's fees.

Appellees moved for summary judgment on their breach-of-settlement-agreement claim and submitted evidence, including a copy of the settlement agreement and a demand notice to the defendants regarding their failure to timely make contractual payment to appellees. Appellants filed an amended answer asserting the affirmative defense of impracticability or impossibility of performance, contending they "have been prohibited from tendering any funds to the [appellees] by the [United States] Securities and Exchange Commission (SEC)." Appellants also asserted appellees' cause of action for breach of the settlement agreement was barred because "compliance with the agreement would violate federal law." Appellants responded to the motion for summary judgment, asserting that after defendants made a total of $400,000 in payments to appellees under the terms of the settlement agreement, and before the next payment became due and "could be made," appellants, among others, "were ordered by the [SEC] to cease any payments to the [appellees] and to cease any payments to any other individuals who invested funds in oil and gas projects, pending the completion of a formal SEC investigation involving the Defendants." According to appellants, "[a]s instructed by the SEC, the Defendants stopped making payments to the Plaintiffs under the terms of the settlement agreement." Appellants attached Hewitt's affidavit to their response to appellees' motion for summary judgment.

The trial court granted appellees' motion for summary judgment. The summary judgment order provides that appellants are jointly and severally liable with others for damages in the amount of $900,000 for breach of contract, as well as interest and attorney's fees of $2,000. The trial court granted severance of the breach-of-settlement-agreement cause of action and the summary judgment on that cause of action. *See* TEX.R. CIV. P. 41 (any claim against a party may be severed and proceeded with separately). Appellants filed a motion for new trial that was overruled by operation of law. This appeal followed.

### Appellees' Hearsay Objections to Appellants' Summary Judgment Evidence

In response to appellees' motion for summary judgment, appellants relied upon Hewitt's affidavit. Appellees raised hearsay objections to paragraphs 4, 5, and 6 of the affidavit. Appellees objected that Hewitt's affidavit offered the following out-of-court statements of representatives of the SEC for the truth of the matters asserted: the SEC was aware of the case and was conducting an investigation of the defendants in the suit, including appellants; the SEC was aware of the settlement agreement between appellants and appellees; and the SEC instructed Hewitt "not to make payments to anyone" under the terms of the settlement agreement, pending completion of an SEC investigation, without the agreement of the SEC, or "distribute funds to any investors." On appeal, appellees argue the trial court sustained appellees' hearsay objections to Hewitt's affidavit and, consequently, appellants failed to raise a genuine issue of material fact on their affirmative defense of impracticability or impossibility of appellants' performance under the settlement agreement.

The record does not contain an express ruling by the trial court sustaining appellees' hearsay objections to Hewitt's affidavit.[2] Appellees urge us to conclude that the trial court implicitly sustained appellees' objections by granting their summary judgment motion. There is a split of authority regarding whether, pursuant to appellate rule of procedure 33.1(a)(2)(A), an objection to summary judgment evidence can be preserved by an implicit ruling in the absence of a written, signed order. *See Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 206 (Tex.App.-Dallas 2005, no pet.). This Court has determined the "better practice is for the trial court to disclose, in writing, its rulings on all evidence before the time it enters the order granting or denying summary judgment." *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d, 879, 883 (Tex.App.-Dallas 2006, no pet.) (quoting *Broadnax v. Kroger Tex., L.P.*, 05-04-01306-CV, 2005 WL 2031783, at *1-2 (Tex.App.-Dallas 2005, no pet.)). On this record, we decline to conclude that the trial court implicitly ruled on appellees' objections to Hewitt's affidavit.

▆▆▆ An objection that an affidavit contains hearsay is an objection to the form of the affidavit. *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex.App.-Dallas 2011, no pet.). A defect in the form of an affidavit must

---

**2.** At the hearing on appellees' motion for summary judgment, counsel for parties not before this Court indicated he wished to address appellees' hearsay objections to the affidavit of Daniel Mulligan filed in response to appellees' motion for summary judgment. Daniel Mulligan's affidavit was similar to Hewitt's affidavit in that it contained statements attributed to the SEC instructing defendants not to make payments that became due under the terms of the settlement agreement. The trial court stated, "You're going to lose this. You're going to lose it. You can—why weren't you able to get me any documentation from the SEC, or anybody that was—that wasn't double hearsay?" Counsel stated those parties were not relying on alleged statements attributed to the SEC for the truth of the matters asserted, but for the assertion that the statements were made and relied upon by those parties. The trial court stated, "You're going to lose this." On appeal, appellees contend these statements by the trial court constituted a ruling that the statements attributed to an SEC representative were offered for the truth of the matters asserted. These statements by the trial court related to appellees' hearsay objections to Mulligan's affidavit, not to Hewitt's affidavit. Moreover, these statements do not constitute a ruling by the trial court regarding hearsay objections. At best, the trial court's statements indicate that at sometime in the future, there could be a ruling on the objections.

be objected to in the trial court and the opposing party must have the opportunity to amend the affidavit. *See* Tex.R. Civ. P. 166a(f); *See Midland Multifamily Equity REIT*, 334 S.W.3d at 374; *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied). The failure to obtain a ruling on an objection to the form of the affidavit waives the objection. *Midland Multifamily Equity REIT*, 334 S.W.3d at 374; *see also S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 855 (Tex. App.-Dallas 2011, no pet.) ("Defects in the form of an affidavit must be objected to, the opposing party must have the opportunity to amend, and the trial court must rule on the objection; otherwise, the objection is waived and the objected-to material is in evidence.").

■ Appellees' hearsay objections to Hewitt's affidavit were objections to the form of the affidavit, and appellees failed to obtain rulings on the objections. Appellees' objections to Hewitt's affidavit have therefore not been preserved for appellate review. Accordingly, we will consider the entirety of Hewitt's affidavit in our review of the merits of this appeal.

## Summary Judgment Standard of Review

The standard of review for a traditional summary judgment is well known. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A traditional summary judgment is reviewed de novo to determine whether a party's right to prevail is established as a matter of law. *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). We must determine whether the movant demonstrated that no genuine issue of material fact existed and he was entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548–49. We

consider the evidence in the light most favorable to the nonmovant. *Id.*

## Analysis of Appellants' Issues on Appeal

In two issues, appellants contend (1) the trial court erred in granting appellees' motion for summary judgment and (2) appellants raised a material issue of fact precluding summary judgment. It is uncontroverted that the settlement agreement is valid and binding and that appellants failed to meet obligations to make payments to appellees under the terms of the settlement agreement. We conclude appellees met their burden under rule 166a(c) to demonstrate that no genuine issue of material fact exists concerning appellants' breach of the settlement agreement. Thus, unless appellants raised a fact issue supporting an affirmative defense sufficient to defeat appellees' motion for summary judgment, the trial court did not err by granting appellees summary judgment as a matter of law. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (if party opposing summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment).

### *Affirmative Defense of Impracticability or Impossibility of Performance*

Appellants asserted the affirmative defense of impracticability or impossibility of performance, contending they "have been prohibited from tendering any funds to the [appellees] by the SEC." Appellants also asserted appellees' cause of action for breach of the settlement agreement was barred because "compliance with the agreement would violate federal law."

Appellants relied on Hewitt's affidavit in support of their affirmative defense. In

his affidavit, Hewitt, a licensed attorney, attested his legal experience includes advising individuals and entities on issues of compliance under federal and state securities law. According to his affidavit, Hewitt was contacted by SEC representatives who advised him the SEC was conducting an investigation of one or more of the defendants in the suit filed by appellees, and he learned the SEC staff was aware of the settlement agreement in this case. In his affidavit, Hewitt stated that at a meeting with SEC staff, he was instructed not to make any payments under the settlement agreement pending completion of the SEC's investigation. Hewitt further stated that "[b]ased on the instructions of the SEC staff," the defendants, including appellants, ceased making payments under the settlement agreement.

■ Taking as true that Hewitt was verbally instructed by SEC staff to withhold payments to appellees under the settlement agreement pending completion of the SEC's investigation, we must determine whether this evidence raises a genuine issue of material fact supporting appellants' affirmative defense sufficient to defeat appellees' motion for summary judgment. "Where ... a party's performance is made impracticable ... by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged...." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex.1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981)). "A governmental regulation or order that makes impracticable the performance of a duty 'is an event the non-occurrence of which was

made a basic assumption on which the contract was made.'" *Centex Corp.*, 840 S.W.2d at 954 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 264 (1981)).[3] The impracticability recognized by section 264 of the Restatement (Second) of Contracts is dependent upon issuance of a governmental order or promulgation of a governmental regulation.

Congress has granted the SEC authority to issue temporary and permanent cease-and-desist orders. *See* Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101–429, §§ 102, 203, 104 Stat. 93 (1990). A temporary cease-and-desist order is a transient stopgap, similar in function to a temporary restraining order, that the SEC may employ against regulated entities in furtherance of its oversight function. *See* 15 U.S.C.A. § 78u–3(c)(1) (West 2009) (SEC may enter a temporary order requiring the respondent to cease and desist from violation or threatened violation and to prevent dissipation or conversion of assets, significant harm to investors, or substantial harm to public interest; such temporary order shall be entered only after notice and opportunity for a hearing, unless the SEC determines that notice and hearing prior to entry would be impracticable or contrary to public interest); 17 C.F.R. § 201.512(a) (2010) (temporary cease-and-desist order shall be issued only if the SEC determines that the alleged violation or threatened violation is likely to result in significant dissipation or conversion of assets, significant harm to investors, or substantial harm to the public interest prior to the completion of proceedings on the permanent cease-and-desist order). Such a

---

3. Specifically, section 264 of the Restatement (Second) of Contracts states:

   If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

   RESTATEMENT (SECOND) OF CONTRACTS § 264.

temporary cease-and-desist order shall become effective upon service on the respondent. 15 U.S.C.A. § 78u–3(c)(1); *see also* 17 C.F.R. § 201.512(c) (2010) (person who serves a temporary cease-and-desist order shall promptly file with the SEC a declaration of service identifying the person served, the method of service, the date of service, the address to which service was made and the person who made service).[4] A federal statute also authorizes the SEC to seek a civil injunction against a person engaged in wrongdoing under the securities laws. *See* 15 U.S.C.A. § 80b–9(d) (West 2009); *Secs. Exch. Comm'n v. Bilzerian,* 29 F.3d 689, 695 (D.C.Cir.1994) (when defendant has violated the securities laws, a civil injunction is appropriate if the court determines there is likelihood that he will violate the laws again in the future).

■ Despite contending they were "ordered" by the SEC staff to cease payments under the settlement agreement, appellants produced no summary judgment evidence of an order issued or regulation promulgated by the SEC compelling cessation of payments under the settlement agreement pending completion of the SEC's investigation. *See Secs. Exch. Comm'n v. Nat'l Student Mktg. Corp.,* 68 F.R.D. 157, 160 (D.D.C.1975), *aff'd,* 538 F.2d 404 (D.C.Cir.1976) ("The SEC consists of five appointed Commissioners who are assisted by staff members. While Commissioners may in fact respect the staff's recommendations, they are not bound by them nor do such recommendations necessarily reflect the position of the agency itself on any given topic."). Specifically, appellants failed to produce summary judgment evidence that performance of their contractual obligations was constrained by a temporary cease-and-desist order issued by the SEC, any written directive from the SEC, or a civil injunction issued by a court at the request of the SEC.

Appellants rely on *Centex Corporation v. Dalton,* 840 S.W.2d 952 (Tex.1992), to support their argument of impracticability or impossibility of performance. However, in *Centex,* the supreme court found that a written order of the Federal Home Loan Bank Board[5] made it unlawful for Centex to make payment to Dalton under the terms of an agreement between them. *Id.* at 954, 956. Here, appellants contend a verbal "instruction" from SEC staff made appellants' performance of payment obligations under the settlement agreement impracticable or impossible. We disagree. Unlike *Centex,* appellants submitted no summary judgment proof of an order or regulation, such as an SEC temporary

---

4. The Texas Securities Act also provides statutory authority for issuance of temporary cease-and-desist orders. *See* Tex.Rev.Civ. Stat. Ann. art. 581–23 (West 2010) (Commissioner may hold a hearing after notice to person subject of the hearing, and if Commissioner determines at such hearing that sale of securities would not be in compliance with the Texas Securities Act, is a fraudulent practice, or would tend to work a fraud on any purchaser thereof or would not be fair, just or equitable to any purchaser thereof, the Commissioner may issue a written cease and desist order); *see also* Tex.Rev.Civ. Stat. Ann. art. 581–23–2(A), (B) (West 2010) (on Commissioner's determination that the conduct, act,

or practice threatens immediate and irreparable public harm, Commission may issue an emergency cease and desist order; the order must (1) be sent on issuance to each person affected by the order by personal delivery or registered or certified mail, return receipt requested, to the person's last known address, (2) state the specific charges and require the person to immediately cease and desist from the unauthorized activity, and (3) contain a notice that a request for a hearing may be filed).

5. A subsequent cease-and-desist order was issued by the Office of Thrift Supervision.

cease-and-desist order or an order of civil injunction, prohibiting appellants' performance of their payment obligations.

We conclude appellants failed to raise a fact issue on their affirmative defense of impracticability or impossibility sufficient to defeat appellees motion for summary judgment. There is nothing in appellants' summary judgment proof, consisting solely of Hewitt's affidavit, to support a good faith belief that appellants' performance under the settlement agreement was impracticable or impossible. *See* RESTATEMENT (SECOND) OF CONTRACTS § 264 cmt. b (party who seeks to justify his non-performance under section 264 must have observed the duty of good faith and fair dealing imposed by section 205 of the Restatement (Second) of Contracts in attempting, where appropriate, to avoid performance); RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

### Affirmative Defense of Excused Performance

Appellants contend they were excused from performance of their payment obligations under the settlement agreement because appellees breached the confidentiality provision of the settlement agreement. Appellants contend that appellees' attachment of the settlement agreement to their motion for summary judgment filed in the public records of this case was a material breach of the settlement agreement and excused appellants from performance of their contractual obligations to make payments. We disagree.

In *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842 (Tex.App.-Dallas 2008, no pet.), this Court addressed the precise argument made by appellants here. In *McAfee*, Deep Nines argued it was not required to perform under a settlement agreement be-

cause McAfee materially breached the agreement by violating the confidentiality clause. *Id.* at 848. Deep Nines alleged McAfee breached the confidentiality clause by attaching the settlement agreement to its pleadings. *Id.* As here, the alleged breach did not occur until after Deep Nines had already breached the agreement by failing to make timely payment under the agreement. *Id.* We concluded that because Deep Nines had already committed a material breach of the agreement, McAfee was excused from any further performance under the terms of the agreement. *Id. See also Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex.2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").

■ Appellants materially breached the settlement agreement by failing to make timely payment. Appellees' alleged breach of the settlement agreement did not occur until after appellants' material breach of the settlement agreement. Appellants were not excused from performance of their payment obligations under the settlement agreement by appellees' alleged breach of the settlement agreement.

Accordingly, because appellants failed to raise a fact issue on their affirmative defenses sufficient to defeat appellees' motion for summary judgment, we overrule appellants' first and second issues.

### Conclusion

We conclude the trial court properly granted summary judgment in favor of appellees, and we affirm the trial court's judgment.