COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| FRED VILLANOVA, | § | No. 08-11-00361-CV |
| Appellant, | § | Appeal from the |
| v. | § | 431st Judicial District Court |
| | § | of Denton County, Texas |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR HOME SAVINGS OF AMERICA,[1] | § | (TC# 2010-50001-367) |
| Appellee. | § | |

## O P I N I O N

In this wrongful-foreclosure proceeding, Fred Villanova appeals the trial court's summary judgment in favor of Home Savings of America (hereinafter, "HSOA"). In seventeen issues, Villanova contends the trial court erred in granting summary judgment because: (1) the affidavits supporting the award of damages and attorneys' fees were fatally defective; and (2) HSOA failed to prove its entitlement to summary judgment on his claims and on its counterclaims and affirmative defense of third-party liability. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[1] After this appeal was docketed, Home Savings of America was placed in receivership and its assets, including the mortgage at issue in this case, are now under the control of the Federal Deposit Insurance Corporation (hereinafter, "FDIC"). We granted the FDIC's motion to be substituted as the party in interest. For the sake of convenience, in discussing the facts and arguments, the opinion refers to Home Savings of America as it is their (now past) practices that are in issue.

This lawsuit involves the foreclosure of two homes: one purchased by Villanova with a loan obtained from HSOA (hereinafter, "the Frisco home") and the other used by Villanova as collateral for the loan (hereinafter, "the Corpus Christi home"). Villanova purchased the Frisco home in August 2007, executing a $593,750.00 note and deed of trust in favor of HSOA. As part of the transaction, Villanova executed an affidavit averring that he intended to occupy the property as his principal residence and that he had not made any false, misleading, or inaccurate statements in connection with the loan.[2]

Covenants in the deed of trust required Villanova, among other obligations, to occupy the Frisco home as his primary residence and not to transfer an interest in that property without HSOA's approval. Notwithstanding these covenants, Villanova—without HSOA's permission—executed a special warranty deed conveying the property to Christina Roth, a woman he had met months earlier on an internet dating site named www.sugardaddyforme.com.[3] In exchange, Villanova received a note from Roth agreeing to pay him $66,532.20 at maturity. Villanova never occupied, and had no intention to occupy, the Frisco home as his primary residence, choosing instead to continue residing in the Corpus Christi home.

After HSOA learned of this transaction, it began foreclosure proceedings against the Frisco home. Villanova averted foreclosure by executing a settlement agreement with HSOA. Pursuant to their agreement, HSOA agreed to stay foreclosure proceedings so long as Villanova complied with the terms of the settlement agreement and the deed of trust. The agreement required Villanova to refinance the Frisco home and, if unable to do so, to list it for sale by

_____

[2] Villanova also signed a document in which he represented that the statements in his loan application were true and correct.

[3] Villanova executed the special warranty deed on the same day he purchased the property.

March 1, 2009 and sell it by September 1, 2009. The agreement further provided that if Villanova placed four interest-only payments into an escrow account by September 1, 2009, he would receive a six-month extension to sell the Frisco home. Unless and until that property was sold or refinanced and the mortgage paid in full, HSOA would not release Villanova from any known claim regarding the mortgage.

When Villanova failed to obtain refinancing, list the home for sale by March 1, 2009, sell it by September 1, 2009, and place funds into an escrow account by September 1, 2009,[4] HSOA provided Villanova with written notice of default and intent to accelerate the note. HSOA then served Villanova with a written notice of acceleration and a notice of a Substitute Trustee's Sale. Before the scheduled foreclosure sale, Villanova sought and obtained a temporary restraining order barring the foreclosure. At a subsequent hearing, the temporary restraining order was dissolved, and HSOA subsequently sold the Frisco and Corpus Christi homes at a foreclosure sale for $622,770.00.

Villanova sued HSOA for fraud, negligence, breach of contract, usury, wrongful foreclosure, and credit slander. HSOA answered, asserting a general denial, affirmative defenses, and counterclaims for breach of settlement agreement, breach of contract, and fraud. After the discovery period ended, HSOA moved for a no-evidence summary judgment on Villanova's claims and for a traditional summary judgment on its counterclaims and the affirmative defense of third-party liability. In its hybrid motion, HSOA asserted it suffered $104,113.13 in damages and incurred $26,248.10 in attorneys' fees. In support of its request for damages, HSOA attached to its motion the affidavit of Paula Chin, who was the Vice President of Loan Servicing and Default Operations for HSOA at that time. Further, in support of its request for attorneys' fees, HSOA

---

[4] Instead, Villanova placed the funds into his attorney's escrow account.

3

attached to its motion the affidavits of its attorneys, Benjamin Idziak and Thomas L. Kapioltas. Villanova responded, raising objections to HSOA's summary judgment evidence, asserting HSOA failed to meet its burden of proof on its counterclaims and affirmative defenses, and maintaining he produced evidence raising genuine issues of material fact on the challenged elements of his causes of action. The trial court overruled Villanova's evidentiary objections, granted summary judgment in favor of HSOA without stating the basis for its ruling. The trial court further awarded HSOA damages and attorneys' fees in the amounts it had sought.[5]

## SUMMARY JUDGMENT EVIDENCE

In six issues, numbers three through eight, Villanova argues the trial court erred in overruling his evidentiary objections to affidavits used by Home Savings in support of its hybrid motion for summary judgment.[6] In particular, Villanova contends, in issues four, five, and eight, that the trial court erred in awarding damages to HSOA because the only summary judgment evidence supporting the award of damages—Chin's affidavit—was defective.[7] According to Villanova, Chin's affidavit was defective because: (1) she lacked personal knowledge; (2) she was not qualified; (3) her damage calculation was flawed; and (4) she failed to attach supporting documents. We agree Chin lacked personal knowledge and therefore sustain issues four, five and eight; however, we do not express any opinion on the legitimacy of the other grounds raised by Villanova challenging the sufficiency of Chin's affidavit.

### *Standard of Review*

---

[5] The trial court also awarded HSOA $20,000 in conditional appellate fees.

[6] Villanova's third issue is a global objection: "The trial court erred in overruling [his] objections to . . . [HSOA's] summary judgment evidence . . . ."

[7] Villanova's eighth issue is also global in scope: "The trial court erred in overruling [his] objections to . . . [Chin's affidavit]."

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Barraza v. Eureka Co., A Div. of White Consolid. Indust., Inc.*, 25 S.W.3d 225, 228 (Tex.App.--El Paso 2000, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To show the trial court abused its discretion in admitting evidence, a complaining party must demonstrate that: (1) the trial court erred in admitting the evidence; (2) the erroneously admitted evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

### *Applicable Law*

When affidavits are used as summary judgment proof, Rule 166a(f) of the Texas Rules of Civil Procedure requires that they be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify about the matters contained in the affidavit. TEX.R.CIV.P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996)(per curiam). As regards to personal knowledge:

> [T]he affiant must swear the facts in the affidavit reflect his personal knowledge. But the mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. The affidavit must explain how the affiant has personal knowledge. Statements represented in the affidavit need factual specificity such as place, time, and exact nature of the alleged facts. 'The key is whether the affidavit clearly shows the affiant is testifying from personal knowledge.'
> The affidavit must 'itself' state the facts and demonstrate the affiant's competency. An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts. Affidavits demonstrating personal knowledge often state the affiant's knowledge is acquired through not only the person's position, but also through his specifically described

5

job duties.

In addition to a person's job title or position, affiants should also explain how they became familiar with the facts in the affidavit. Furthermore, courts sometimes review whether the affiant is able to obtain personal knowledge because he was employed during a particular time period.

*Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553-54 (Tex.App.--Houston [14th Dist.] 2010, no pet.)[Citations omitted]. The *Valenzuela* Court concluded an affiant who merely states his job title without identifying his responsibilities or other basis for personal knowledge of the facts he asserts has not demonstrated personal knowledge. *Id*. at 554. An affidavit showing no basis for personal knowledge is legally insufficient. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994); *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988).

## *Discussion*

Chin lacked personal knowledge to make the affidavit. In its entirety, Chin's affidavit reads:

1. 'My name is Paula Chin. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am a duly authorized representative of [HSOA] and currently hold the position of Vice President, Loan Servicing and Default Operations for [HSOA].

3. Defendant [HSOA] originated a purchase money loan (loan number 06-517874) to . . . Villanova on August 22, 2007 to purchase [the Frisco home].

4. The loan was in the original principal amount of $593,750.00 and contained a negative amortization provision. At the time of the default, the total debt due from . . . Villanova to [HSOA] was $638,936.25.

5. The loan secured by [the Frisco home] had a cross collateralization provision and was also secured by [the Corpus Christy home].

6. [HSOA] incurred $5,511.36 in expenses related to maintaining and selling [the Frisco home] and [the Corpus Christi home].

6

7. [HSOA] received $525,716.04 for the sale of [the Corpus Christi home] and [the Frisco home]. [HSOA] also received $14,618.45 in bond funds recovered in relation to . . . Villanova's Motion for Temporary Injunction.

8. After taking into account the total debt owed by . . . Villanova, expenses incurred by [HSOA] after foreclosing on [the Frisco home] and [the Corpus Christi home], proceeds received from the sale of [the Frisco home] and [the Corpus Christi home], and the recovered bond funds, [HSOA] still has an outstanding deficiency of $104,113.13 owed by . . . Villanova plus incurred attorney fees.

9. Further Affiant sayeth not.'

Chin states in her affidavit that she is HSOA's duly authorized representative and its current Vice President of Loan Servicing and Default Operations. She also states "[t]he facts stated in this affidavit are within my personal knowledge and are true and correct." However, critically, the affidavit contains no other statements affirmatively demonstrating how Chin has personal knowledge of the statements contained in it. The affidavit does not state whether Chin was Vice President of Loan Servicing and Default Operations during the relevant time period, how her job duties in that role afforded her the knowledge about Villanova's claim, or how she was familiar with these two foreclosures. The affidavit is, therefore, incompetent to prove the facts about which Chin testifies. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *Valenzuela*, 317 S.W.3d at 554.

HSOA claims that Chin's averment that the facts in the affidavit are within her personal knowledge is, by itself, sufficient proof of her personal knowledge because that averment is not controverted by other evidence.[8] However, simply stating that the affiant has personal knowledge

---

[8] We note HSOA does not argue Chin's position as Vice President of Loan Servicing and Default Operations established she had personal knowledge. In some contexts, an affiant's position within a company, by itself, is sufficient proof of personal knowledge. *See, e.g., Requipco v. Am-Tex Tank & Equipment, Inc.*, 738 S.W.2d 299, 301 (Tex.App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.)(holding that a statement that the affiant is president of the company asserting a claim on an account is sufficient to affirmatively show how the affiant has personal knowledge of the affidavit statements regarding the account); *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 407 (Tex.App.--Corpus Christi 1999, no pet.)(holding that a statement that the affiant is senior vice-president and secretary

of the statements in the affidavit is inadequate unless the affidavit contains other statements that affirmatively reveal how the affiant has personal knowledge. *Valenzuela*, 317 S.W.3d at 553. As discussed above, Chin's affidavit lacks these other statements. HSOA also mentions Villanova did not cite case law or authority in arguing Chin did not have personal knowledge. However, HSOA does not contend Villanova inadequately briefed the issue, and, in any event, Villanova cites Rule 166(a)(f) of the Texas Rules of Civil Procedure—the rule governing the use of affidavits in summary-judgment proceedings.

Without Chin's affidavit, HSOA failed to establish its entitlement to damages; therefore, the trial court erred in awarding damages. The trial court also erred in awarding attorneys' fees to HSOA. Under Chapter 38 of the Civil Practice and Remedies Code, a prevailing party may "recover reasonable attorney's fees . . . if the claim is for . . . an oral or written contract." *See* TEX.CIV.PRAC.&REM.CODE ANN. § 38.001 (West 2008). In this case, HSOA sought attorneys' fees for prosecuting its counterclaims for breach of contract and breach of the settlement agreement. In order to recover attorneys' fees under Chapter 38 for prosecuting these types of counterclaims, a party must first prevail on the underlying claim *and recover damages*. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex.2009). Here, HSOA has not recovered damages. Accordingly, HSOA is not entitled to attorneys' fees.[9]

---

of a corporation asserting a special appearance is sufficient to affirmatively show how the affiant has personal knowledge of the affidavit statements regarding the corporation's contacts with Texas). Because HSOA does not raise this argument on appeal, we need not address it.

[9] In footnote number five, we mentioned that the trial court awarded HSOA $20,000 in conditional appellate fees. With regard to these fees, we note that their award is not conditioned upon a successful outcome. Rather, the award is unconditional:

> 8. If this case is appealed to the Court of Appeals, [HSOA] is entitled to an additional amount of $10,000.00.

Villanova's fourth, fifth, and eighth issues are sustained. Given our disposition of these issues, we need not address Villanova's challenges to the affidavits supporting the award of attorneys' fees—issues six and seven—and Villanova's global complaint contained in issue three. (See footnote 6). *See* TEX.R.APP.P. 47.1 (requiring the court of appeals to hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to the disposition of the appeal).

## SUMMARY JUDGMENT

We now turn to the merits of HSOA's motion for summary judgment, which presented both traditional and no-evidence grounds for summary judgment. *See* TEX.R.CIV.P. 166a(c) and 166a(i).

### *Standard of Review*

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, the trial court grants the motion for summary judgment without stating the basis for its ruling, we must affirm the trial court's judgment if any of the theories advanced is meritorious. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

After an adequate time for discovery, a party may move for summary judgment on the

9. If this case is appealed to the Texas Supreme Court, [HSOA] is entitled to an additional amount of $10,000.00.

An award of attorney's fees that is unconditional has a chilling effect on the paying party's exercise of legal rights. *In re Ford Motor Co.*, 988 S.W.2d 714, 722 (Tex. 1998)(orig. proceeding). Therefore, an award of appellate attorney's fees must be conditioned on the appeal being unsuccessful. *See id.* at 721. Had we upheld the award of attorney's fees on appeal, we would have modified the judgment so that the award was conditioned on the paying party's lack of success on appeal. *See Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex.App.--Houston [1st Dist.] 2007, no pet.). However, since we did not uphold the award on appeal, there is no need to modify the judgment. That said, we include this discussion for the trial court's benefit should it award conditional appellate fees on remand.

ground that no evidence exists to support one or more essential elements of a claim. TEX.R.CIV.P. 166a(i) & cmts. The non-movant bears the burden to produce more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See id*. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). If the non-movant fails to meet his burden, the trial court must grant the motion for summary judgment. TEX.R.CIV.P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Unlike a no-evidence motion, a traditional motion for summary judgment must stand on its own merits; there is no right to a traditional summary judgment by default. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

In determining whether the non-movant has raised a genuine issue of material fact, we review the evidence presented by the motion and response in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

**TRADITIONAL MOTION FOR SUMMARY JUDGMENT**

We begin our discussion by addressing Villanova's challenges to the trial court's grant of summary judgment in favor of HSOA on its counterclaims and the "affirmative defense of third party liability."

## 1. HSOA's Counterclaims for Breach of Contract, Breach of Settlement Agreement, and Fraud

In his twelfth, fourteenth, and fifteenth issues, Villanova argues HSOA was not entitled to summary judgment on its counterclaims for breach of settlement agreement, breach of contract, and fraud, respectively, because HSOA failed to prove, among other matters, that it suffered damages. We agree.

### *Applicable Law*

A settlement agreement is a contract. *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex.App.--Fort Worth 2009, pet. denied). To succeed on a breach-of-contract claim, a plaintiff must prove: (1) the existence of a valid contract between the plaintiff and the defendant; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of the breach. *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex.App.--San Antonio 2007, pet. denied).

The elements of common-law fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990). An injured party may recover direct damages for the actual

11

injury it suffered as a result of the defendant's fraud. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.*, 960 S.W.2d 41, 49 (Tex. 1998).

### *Discussion*

HSOA was not entitled to summary judgment on its counterclaims for breach of contract, breach of settlement agreement, and fraud because it failed to prove that, as a matter of law, it suffered damages.[10] HSOA relied exclusively on Chin's affidavit to prove damages. However, Chin's affidavit is fatally defective and cannot support an award of damages. Because HSOA failed to demonstrate its right to judgment as a matter of law on its counterclaims, the trial court could not have granted judgment as a matter of law on the counterclaims. Accordingly, the trial court erred in granting summary judgment on this basis.

Villanova's twelfth, fourteenth, and fifteenth issues are sustained.

### 2. HSOA's "Affirmative Defense" of Third-Party Liability

In his sixteenth issue, Villanova argues HSOA failed to prove that its "affirmative defense of third party liability" "constituted a defense to any of the four causes of action that it cited (usury, wrongful foreclosure, breach of contract and fraud)." We agree.

### *Applicable Law*

Villanova correctly points out in his brief that HSOA did not set forth the elements of its "affirmative defense of third party liability" in its motion for summary judgment. Instead, HSOA claimed, without citation to any authority:

> This [c]ourt should deny Villanova's claim for Usury, Wrongful Foreclosure, Breach of Contract, and Fraud based on HSOA's affirmative defense that the occurrences made the basis of Villanova's claims, and all the injuries or damages alleged to have been sustained by Villanova, were caused in whole or in

---

[10] We do not address whether HSOA carry its burden to establish Villanova's liability on its counterclaims. While HSOA may have proved liability without difficulty, we cannot so presume given that Villanova contested the issue.

12

part by third persons or parties (namely Villanova himself and Roth) over whom HSOA had no control, and for whose acts and/or omissions it was not responsible, in fact or in law, and said actions of such third parties was the proximate cause of the occurrences made the basis of this lawsuit and the injuries and damages alleged to have been sustained by Villanova.

As best as we can surmise, HSOA is invoking the inferential rebuttal defense of sole proximate cause, which is not an affirmative defense. *In re Nance*, 143 S.W.3d 506, 513 n.7 (Tex.App.--Austin 2004, no pet.); *Walzier v. Newton*, 27 S.W.3d 561, 563 (Tex.App.--Amarillo 2000, no pet.).

Inferential rebuttals are defensive theories that operate to rebut an essential element of the plaintiff's case or the existence of a *prima facie* case by establishing the truth of a positive factual theory that is inconsistent with some factual element of the ground of recovery. *Montes v. Pendergrass*, 61 S.W.3d 505, 508 (Tex.App.--San Antonio 2001, no pet.); *Buls v. Fuselier*, 55 S.W.3d 204, 211 (Tex.App.--Texarkana 2001, no pet.). Affirmative defenses, on the other hand, relieve a defendant of liability even if all the elements of the plaintiff's cause of action are established. *Montes*, 61 S.W.3d at 508; *Buls*, 55 S.W.3d at 211. "In effect, the evidence offered to prove such a defense does not rebut the factual propositions uttered by the plaintiff, but instead serves to establish an independent reason for denying the plaintiff any recovery." *Walzier*, 27 S.W.3d at 563.

### *Discussion*

HSOA was not entitled to summary judgment on its inferential rebuttal defense of sole proximate cause because it failed to conclusively prove this defense as a matter of law. For HSOA to obtain summary judgment on the basis of sole proximate cause, it had to disprove at least one element of each of Villanova's causes of action or prima facie case. As the party relying on

13

an inferential rebuttal defense, HSOA bore the burden to produce sufficient evidence establishing the defense as a matter of law. *See* David F. Johnson, *Can A Party File A No-Evidence Motion for Summary Judgment Based Upon an Inferential Rebuttal Defense?*, 53 BAYLOR L.REV. 763, 775, 779 (2001)(explaining that party relying on inferential rebuttal defense bears the initial burden of production to produce some evidence to support that defense). Here, HSOA asserted in its motion for summary judgment that Villanova's judicial admissions that his damages were caused by Roth's actions relieved it "from the burden of proving the admitted fact." Except judicial admissions are not considered summary judgment proof, but rather a waiver of proof. *Galvan v. Public Utilities Bd.*, 778 S.W.2d 580, 583 (Tex.App.--Corpus Christi 1989, no writ). Thus, HSOA cannot rely on Villanova's judicial admissions as evidence to establish its inferential rebuttal defense.

HSOA also asserted in its motion that that Villanova fraudulently misrepresented that he would occupy the Frisco home and that he would not transfer an interest in the home without obtaining HSOA's prior approval. However, we do not understand, and HSOA has not explained, how evidence of alleged fraudulent misrepresentations disproves at least one element of Villanova's causes of action for wrongful foreclosure, usury, breach of contract, and fraud. Indeed, HSOA fails to identify in its motion for summary judgment the specific elements of Villanova's causes of action it sought to negate and how the defense of sole proximate cause acted to negate those elements.

On appeal, HSOA re-urges these same arguments, but also contends "Villanova's challenge to HSOA's third party liability defense should be dismissed for failure to brief the issue." However, HSOA is the party moving for traditional summary judgment on the inferential

14

rebuttal defense of sole proximate cause, and a traditional motion for summary judgment must stand on its own merits; there is no right to a traditional summary judgment by default. *See City of Houston*, 589 S.W.2d at 678.

Because HSOA failed to demonstrate its right to judgment as a matter of law on its inferential rebuttal defense of sole proximate cause, the trial court could not have granted judgment as a matter of law on the counterclaims. Accordingly, the trial court erred in granting summary judgment on this basis.

Villanova's sixteenth issue is sustained.

### HSOA'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

We now turn to Villanova's challenges to the trial court's grant of summary judgment on no-evidence grounds.

### 1. Villanova's Usury Claim

In his ninth issue, Villanova argues the trial court erred in granting summary judgment on his usury claim because there was more than a scintilla of evidence that "there was a loan of money and there was a demand or charge for money not owed." We disagree.

### *Applicable Law*

Usury is any charged interest, "in excess of the amount allowed by law." *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994). To prevail on a claim of usury, a party must prove: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of greater compensation than is allowed by law for the borrower's use of the money. *Id.* A "loan" is an advance of money made to or on behalf of an obligor, "the principal amount of which the obligor has an obligation to pay the creditor." TEX.FIN.CODE ANN. § 301.002(a)(10)

15

(West 2006). "Interest" is compensation for the use, forbearance, or detention of money. TEX.FIN.CODE ANN. § 301.002(a)(4). "Usurious interest" is interest that exceeds the applicable maximum amount allowed by law. *Id.* at § 301.002(a)(17).

### *Discussion*

Villanova contends Home Saving charged usurious interest by "demand[ing] payment of the monies put in escrow pursuant to settlement agreement when it was not entitled to those payments and when he was not in default under the note." However, "a settlement agreement such as this one, freely entered into by parties to litigation to compromise and settle their dispute, does not involve a lending or credit transaction and is not the type of agreement the usury laws were intended to govern." *Starr v. Dart*, No. 14-07-00673-CV, 2008 WL 2841685, *4 (Tex.App.--Houston [14th Dist.] July 24, 2008, pet. denied)(mem. op.), *citing Wiley-Reiter Corp. v. Groce*, 693 S.W.2d 701, 703 (Tex.App.--Houston [14th Dist.] 1985, no writ). Villanova does not acknowledge, let alone distinguish *Starr*, nor does he direct us to any authority to the contrary. Instead, Villanova argues HSOA actually demanded payment under the loan, not under the settlement agreement. As evidentiary support for this argument, Villanova directs our attention to the affidavit he executed and attached to his response to HSOA's no-evidence motion. In that affidavit, Villanova avers in pertinent part:

> I had paid $13,660.32 in the registry of the Court in an attempt to comply with the December 2, 2008 settlement agreement. I had previously given this money to my attorney to put in his trust account since we were unable to reach an agreement with the defendant as to where to escrow the money by September of 2009. The defendant demanded payment of this money to be paid on my loan before I paid it to my attorney's trust account despite the fact that my loan was current at that time.

It is evident that the "money" to which Villanova refers in his affidavit is the sum of the four escrow payments Villanova was to have made pursuant to the Settlement Agreement, not the loan.

16

Accordingly, the trial court did not err in granting HSOA's no-evidence motion on this basis.

Villanova's ninth issue is overruled.

## 2. Villanova's Wrongful Foreclosure Claim

In his tenth issue, Villanova contends the trial court erred in granting summary judgment on his wrongful-foreclosure claim. By six sub-issues, Villanova asserts summary judgment was improper because: (1) HSOA failed to identify in its motion what elements of his claim were allegedly not met; (2) HSOA committed fraud by foreclosing pursuant to settlement agreement and not the deed of trust; (3) HSOA's agents were complicit in the fraud perpetrated against him by Roth; (4) HSOA lacked the capacity to enforce the terms of the deed of trust, since MERS[11]—not HSOA—is the beneficiary under the deed of trust; (5) HSOA obtained a grossly inadequate selling price at foreclosure; and (6) HSOA made unauthorized inquiries into, and falsely reported, his credit. We disagree.

### Applicable Law

The elements of a wrongful-foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex.App.--Corpus Christi 2008, no pet.); *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.--Houston [14th Dist.] 1989, writ denied).

A "defect" or "irregularity" occurs in the foreclosure process if property is sold for "an unfair" price because third parties were deterred from bidding. *Pentad Joint Venture v. First Nat'l Bank of La Grange*, 797 S.W.2d 92, 96 (Tex.App.--Austin 1990, writ denied). A mortgagee

---

[11] MERS stands for Mortgage Electronic Registration Systems, which is "an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships interests in, and servicing rights to, mortgage loans." *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F.Supp.2d 1368, 1370 (J.P.M.L. 2009).

therefore has a duty to avoid affirmatively deterring prospective bidders by acts or statements made before or during a foreclosure sale. *Pentad Joint Venture*, 797 S.W.2d at 96. However, "a mortgagee is under no duty to take affirmative action, beyond that required by statute or the deed of trust, to ensure a 'fair' sale." *Id.*

Section 51.002 of the Texas Property Code governs a foreclosure sale of real property pursuant to a deed of trust. *See* TEX.PROP.CODE ANN. § 51.002 (West 2007). The statute sets out specific requirements as to the time and place a foreclosure sale must be held and as to the notice requirements that must be met.[12] *See* TEX.PROP.CODE ANN. §§ 51.002(a)-(e). For a trustee to lawfully undertake a foreclosure on real property, the trustee must comply with the notice requirements set forth in the deed of trust and as otherwise required by law. *Stanley v. CitiFinancial Mortg. Co., Inc.*, 121 S.W.3d 811, 817 (Tex.App.--Beaumont 2003, pet. denied).

### *Discussion*

HSOA was entitled to summary judgment on Villanova's wrongful-foreclosure claim because Villanova failed to produce any evidence of an irregularity or defect in the foreclosure sale proceeding. A "defect" or "irregularity" occurs in the foreclosure process if property is sold for "an unfair" price because third parties were deterred from bidding. *Pentad Joint Venture*, 797 S.W.2d at 96. A mortgagee therefore has a duty to avoid affirmatively deterring prospective bidders by acts or statements made before or during a foreclosure sale. *Id.* However, "a

---

[12] Under the statute, notice must be given at least twenty-one days before the date of the sale. TEX.PROP.CODE ANN. § 51.002(b). Proper notice can be accomplished by "serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." TEX.PROP.CODE ANN. § 51.002(b)(3). Section 51.002(d) provides: "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust . . . with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least twenty days to cure the default before notice of sale can be given under Subsection (b). TEX.PROP.CODE ANN. § 51.002(d). Subsection (e) provides that "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service. TEX.PROP.CODE ANN. § 51.002(e).

mortgagee is under no duty to take affirmative action, beyond that required by statute or the deed of trust, to ensure a 'fair' sale." *Pentad Joint Venture*, 797 S.W.2d at 96. Here, Villanova produced no evidence HSOA affirmatively deterred third parties from bidding on the Frisco and Corpus Christi homes. Indeed, Villanova did not raise that allegation in his petition or responses to HSOA's motion for summary judgment.

In arguing why the trial court erred in granting summary judgment on his wrongful-foreclosure claim, Villanova asserts in his first sub-issue that HSOA failed to identify in its hybrid motion the reasons why he could not prevail on this claim. Villanova is mistaken. As identified by HSOA, these reasons why Villanova could not prevail were because it was authorized to foreclose on the properties based on Villanova's breaches of the deed of trust and the settlement agreement and because Villanova failed to raise "any technical deficiency with the foreclosure itself."

As for the complaints raised by Villanova in his second through sixth sub-issues, they are inadequately briefed for our consideration.[13] Under the Texas Rules of Appellate Procedure, a brief submitted by an appellant must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). An appellate issue unsupported by argument or citation to the record or legal authority presents

---

[13] As mentioned earlier, these five sub-issues encompass Villanova's complaints that: (1) HSOA committed fraud by foreclosing pursuant to settlement agreement and not the deed of trust; (2) HSOA's agents were complicit in the fraud perpetrated against him by Roth; (3) HSOA lacked the capacity to enforce the terms of the deed of trust, since MERS—not HSOA—is the beneficiary under the deed of trust; (4) HSOA obtained a grossly inadequate selling price at foreclosure; and (5) HSOA made unauthorized inquiries into, and falsely reported, his credit. Most, if not all, of the grounds raised in these sub-issues concern HSOA's allegedly inequitable behavior. *See* Elizabeth Renuart, *Toward a More Equitable Balance: Homeowner and Purchaser Tensions in Non-Judicial Foreclosure States*, 24 LOY. CONSUMER L. REV. 562, 564 (2012)(identifying the following as some of the types of deficiencies or fraudulent behavior that can occur in the foreclosure process: (1) failure to provide contractually or legally required notices; (2) lack of authority to foreclose; (3) fraud in the process; (4) rigging the sale; (5) grossly inadequate sale price; and (6) other irregularity or unfairness). Though some of these grounds are valid bases for prosecuting a wrongful foreclosure suit, *e.g.*, grossly inadequate sale price, the fact remains Villanova failed to produce any evidence of an irregularity or defect in the foreclosure process as required by Texas law.

nothing for review. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex.App.--El Paso 2007, no pet.). As we noted in *Valadez*:

> It is the Appellant's burden to discuss her assertions of error. An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error. Were we to do so, even on behalf of a *pro se* appellant, we would be abandoning our role as neutral adjudicators and become an advocate for that party.

*Valadez*, 238 S.W.3d at 845 [Citations omitted].

Here, Villanova failed to cite any pertinent authority in support of his arguments. *See* TEX.R.APP.P. 38.1. Further, although Villanova did cite a single authority for the proposition that a non-judicial foreclosure is a harsh remedy and must be strictly construed, he thereafter provided no discussion or argument of the case cited nor an explanation of how that case supported his specific contentions.

The trial court did not err in granting HSOA's no-evidence motion on this basis.

Villanova's tenth issue is overruled.

### 3. Villanova's Breach-of-Contract Claim

In his eleventh issue, Villanova asserts HSOA was not entitled to summary judgment on his breach-of-contract claim because he was excused from performing his obligations under the settlement agreement due to supervening impossibility. We disagree.

HSOA moved for summary judgment on Villanova's breach-of-contract claim on the grounds that there was no evidence Villanova performed the contract and HSOA breached the contract. In his response, Villanova asserted, "[HSOA] moves for summary judgment alleging that there is no evidence that [he] performed the contract or was excused from performing his

20

contractual obligation and [HSOA] breached the contract." According to Villanova, "[he] . . . presented more than a scintilla of evidence showing that he was excused from performing his obligations under the settlement agreement in that he could not list the property or sell it within the timeline since he did not have it in his possession." However, contrary to Villanova's assertion, HSOA never sought summary judgment on the basis that Villanova could not show he was excused from performing his obligations under the settlement agreement due to supervening circumstances. Rather, it was Villanova who raised that issue in his response. Villanova, however, cannot rely on the affirmative defenses of impossibility of performance and excused performance to defeat HSOA's no-evidence motion because he failed to assert these defenses in his petition. *See Hewitt v. Biscaro*, 353 S.W.3d 304, 308-09, 311 (Tex.App.--Dallas 2011, no pet.)(impossibility of performance and excused performance are affirmative defenses); TEX.R.CIV.P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense"). Accordingly, the trial court did not err in granting HSOA's no-evidence motion on this basis.

Villanova's eleventh issue is overruled.

### 4.   Villanova's Fraud Claim

In his thirteenth issue, Villanova asserts the trial court erred in granting summary judgment on his fraud claim because HSOA made a false representation to him by failing to follow its own guidelines to ensure that the signature on the loan application was his and by failing to notify him that his signature had been forged. In other words, Villanova claims that, even though he signed the closing documents to purchase the Frisco home, he was nonetheless defrauded by HSOA's failure to ensure that all the documentation involved in the transaction was signed by him in the

presence of its agents.[14]  We disagree.

### *Applicable Law*

As stated previously, the elements of common-law fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *T.O. Stanley Boot Co.*, 847 S.W.2d at 222; *Eagle Properties, Ltd.*, 807 S.W.2d at 723.

### *Discussion*

HSOA was entitled to summary judgment on Villanova's fraud claim because there is no evidence that HSOA made a representation and, if made, that it was false.

Villanova argues HSOA's silence is equivalent to a false representation and cites *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655 (Tex. 1979), for this proposition. Villanova is correct that silence may be equivalent to a false representation, but *Smith* makes clear this is true only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. *Smith*, 585 S.W.2d at 658; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Those circumstances do not exist here. This Court has held that lenders owe no fiduciary duties to their borrowers. *Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex.App.--El Paso 2010, pet. denied); *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 410 (Tex.App.--El Paso 2004, no pet.).

---

[14] Villanova also contends—in one sentence in his brief—that "the pursuit of foreclosure for an alleged breach of the settlement agreement constituted fraud." Villanova cites no authority for this proposition, nor does he pause to explain how breaching a settlement agreement constitutes fraud. Accordingly, Villanova has inadequately briefed this issue and, thus, waived it. *See* TEX.R.APP.P. 38.1(i)("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Further, Villanova has now shown he and HSOA enjoyed the type of "special relationship" giving rise to duties of good faith and fair dealing. He merely assumes that such a duty exits. Although when a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities. *Wil-Roye Inv. Co. II*, 142 S.W.3d at 410. Here, Villanova has not alleged facts nor produced evidence demonstrating that HSOA had excessive control over or influence in his business activities. Accordingly, we have no reason to conclude that Villanova's relationship with HSOA was anything other than an ordinary, arm's-length, lender-borrower relationship. In that type of relationship, the duty of good faith and fair dealing does not arise. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 52 (the duty of good faith and fair dealing does not arise in ordinary commercial transactions); *see also English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)(rejecting contention that an implied duty of good faith and fair dealing exists in every contract).

The trial court did not err in granting HSOA's no-evidence motion on this basis.

Villanova's thirteenth issue is overruled.

### 5. Villanova's Credit Slander and Negligence Claims

In his seventeenth issue, Villanova argues the trial court erred in granting summary judgment on his credit slander and negligence claims because HSOA "never filed an amended or supplemental motion seeking summary judgment on either of those claims." Villanova is mistaken.

HSOA addressed these claims in several pleadings filed with the trial court. In its reply to Villanova's response to its motion for summary judgment, HSOA specifically excepted to these

23

claims, asserting they were not sufficiently pled and that credit slander was not a cognizable claim in Texas. Further, HSOA argued summary judgment was appropriate as to these claims because Villanova's fraud in obtaining the mortgage and his breach of the settlement agreement "conclusively negate[d] a common element of Plaintiff's the [sic] newly and previously pleaded claims." In a subsequently filed reply to Villanova's response to the afore-mentioned reply, HSOA contended summary judgment on Villanova's negligence claim was appropriate because his claim was barred by limitations. Yet, in its briefing to the trial court seeking clarification of the trial court's pronouncement that it was granting summary judgment, HSOA reiterated Villanova's negligence claim was barred by limitations and Villanova's credit-slander claim failed to state a cause of action under Texas law. Accordingly, the trial court did not err in granting HSOA's no-evidence motion on this basis.

Villanova's seventeenth issue is overruled.

### CONCLUSION

We reverse the portion of the trial court's judgment awarding damages and attorneys' fees and granting summary judgment on HSOA's counterclaims and inferential rebuttal defense of sole proximate cause. Because damages are unliquidated and Villanova has contested liability, we remand these causes on all issues—including liability—to the trial court for further proceedings consistent with this opinion. *See* TEX.R.APP.P. 44.1(b); *Natural Gas Clearinghouse v. Midgard Energy Co.*, 23 S.W.3d 372, 380 (Tex.App.--Amarillo 2000, pet. denied)(op. on reh'g)(relying on Rule 44.1(b) of the Texas Rules of Procedure to remand the cause on all issues, including liability, because damages were unliquidated and appellant contested liability). In all other respects, we

24

affirm the trial court's judgment.[15]


June 25, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

---

[15] Because of our disposition of the issues raised by Villanova, we need not address his first and second issues:

> [(1)] The trial court erred in granting appellee's motion for traditional summary judgment since genuine issues of material fact existed and appellee failed to prove that it was entitled to judgment as a matter of law.

> [(2)] The trial court erred in granting appellee's no-evidence motion for summary judgment since appellant presented more than a scintilla of evidence on each of the grounds on which the appellee alleged that there was no evidence.

*See* TEX.R.APP.P. 47.1.

Further, given our disposition of this appeal, we deny as moot the FDIC's motion to strike the letter brief filed by Villanova on January 6, 2014. In that letter brief, Villanova cited additional authority in support of his argument that the amount of the alleged deficiency he owed HSOA was calculated incorrectly.