**Opinion issued December 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00487-CV

———————————

## CITY OF HOUSTON, Appellant

## V.

## SHEILA MCGRIFF, Appellee

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-60676**

---

## O P I N I O N

In this interlocutory appeal,[1] appellant, City of Houston (the "City"),

challenges the trial court's order denying its combined plea to the jurisdiction and

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *see also Thomas v. Long*,
        207 S.W.3d 334, 338–40 (Tex. 2006) (summary-judgment motion challenging trial
        court's subject-matter jurisdiction is subsumed under Texas Civil Practice and

summary-judgment motion filed in the suit of appellee, Sheila McGriff, against the City for negligence. In its sole issue, the City contends that the trial court lacks subject-matter jurisdiction over McGriff's suit.

We affirm.

## Background

In her petition, McGriff alleged that on October 15, 2018, she was driving a bus "westbound on Park Place Boulevard" at "approximately the 8200 block." At the same time, Fred Robertson, was driving "a freightliner and towing a trailer—both of which [were] owned by [the City]—eastbound on Park Place Boulevard also at approximately the 8200 block." Robertson was driving the City's vehicle, the freightliner, "while in the course and scope of his employment with" the City.

According to McGriff, Robertson applied the brakes to the freightliner, but "did not account for any drifting" of the freightliner, and "[s]uddenly and without warning, [the freightliner] slid into [McGriff's] lane of travel, colliding with the side of the bus that [McGriff] was driving." As a result of the collision, McGriff sustained severe personal injuries, including a traumatic brain injury.

Remedies Code section 54.014(a)(8)); *City of Houston v. Garza*, No. 01-18-01069-CV, 2019 WL 2932851, at *3 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.) ("When a governmental unit asserts immunity in a motion for summary judgment, a court of appeals has jurisdiction to review an interlocutory order denying summary judgment.").

McGriff brought a claim against the City for negligence, alleging that Robertson, a City employee, was negligent in:

- "Driving the [freightliner] at a rate of speed than that at which an ordinary and prudent person would have driven under the same or similar circumstances";

- "Failing to maintain a proper lookout";

- "Failing to safely manage the space around the [freightliner]";

- "Failing to stop before colliding with [McGriff's bus]";

- "Failing to timely and properly adjust the operation of the [freightliner] to traffic around the [freightliner]";

- "Failing to take evasive action"; and

- Failing to pay attention, including but not limited to "using or attempting to use a [cellular telephone]."

McGriff alleged that Robertson's negligence proximately caused her injuries, and McGriff sought damages.

The City answered, generally denying the allegations in McGriff's petition, and asserting governmental immunity and "exemptions and exceptions from, and limitations on, liability" provided by the Texas Tort Claims Act ("TTCA").[2] The City also asserted "sudden emergency" and that "an unknown person driving a small white car committed a criminal act by failing to yield the right of way at a stop sign,

---

[2]     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109.

which caused or contributed to cause the loss or injury that [was] the subject of [McGriff's] suit." According to the City, "[t]he driver of the small white car made an unsafe left turn in front of [Robertson's freightliner]," in violation of the Texas Transportation Code.

The City then filed a combined plea to the jurisdiction and summary-judgment motion, arguing that the trial court lacks subject-matter jurisdiction over McGriff's suit because the City is entitled to governmental immunity and McGriff failed to show that her suit against the City fell under the waiver of governmental immunity provided by the TTCA.[3] According to the City, the TTCA did not waive the City's governmental immunity in a suit arising from the negligent operation or use of a motor-driven vehicle by a governmental employee acting in the scope of his employment when the governmental employee was not personally liable to the plaintiff under Texas law.[4] Here, the City argued that Robertson—the City's employee—was not liable to McGriff—the plaintiff—for negligence under Texas law because the "sudden emergency" defense applied as a matter of law and defeated McGriff's negligence claim. The City explained that a sudden emergency existed when (1) an emergency situation arose suddenly and unexpectedly, (2) the emergency situation was not proximately caused by the negligent act or omission of

---

[3]    *See id.* § 101.021(1).

[4]    *See id.* § 101.021(1)(B).

4

the person whose conduct was under inquiry, and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances.

In asserting that the sudden emergency defense applied and defeated McGriff's negligence claim, the City alleged that at about 6:00 p.m. on October 15, 2018, Robertson was driving the freightliner and trailer eastbound on Park Place Boulevard, in the right lane of the two eastbound lanes of travel. McGriff was driving a bus westbound on Park Place Boulevard, and a driver of a white car was stopped at a stop sign on Hartford Street, which intersected with Park Place Boulevard. Before McGriff passed the intersection of Hartford Street and Park Place Boulevard, the driver of the white car made a sudden left turn across both westbound lanes of travel and one eastbound lane of travel on Park Place Boulevard, "cutting in front" of Robertson's freightliner, with its fully-loaded trailer. The driver of the white car then slowed down in front of Robertson. Robertson was forced to brake to "avoid destroying the white car." (Internal quotations omitted.) According to the City, "[t]he white car would have been crushed had Robertson not been paying attention and driving with due caution."

Because the road was wet, when Robertson braked, the freightliner and trailer "jackknife[d]," "fold[ing] at the hitch that connect[ed] the trailer to the

5

[freightliner]," and began sliding into the left eastbound lane of travel on Park Place Boulevard and toward "the yellow line dividing east and west bound traffic." McGriff's bus was approaching in the opposite direction and did not slow down. Robertson "turn[ed] his wheels and gain[ed] control of [the freightliner] and trailer to avoid hitting McGriff's bus head on." The law enforcement crash report concluded that the collision was caused by the driver of the white car, and "no fault [was found] on the part of Robertson." Robertson's supervisor determined that Robertson "was not at fault and [had] exercised due caution."

According to the City, the evidence demonstrated that an emergency situation arose suddenly and unexpectedly and was not caused by any negligent or wrongful action by Robertson; the collision was caused by the actions of the driver in the white car. Robertson had "reacted in the safest way possible without time for deliberation." And the sudden emergency defense applied to the instant case.

The City attached to its combined plea to the jurisdiction and summary-judgment motion a copy of a Texas Peace Officer's Crash Report (the "Crash Report") stating that Robertson's freightliner was traveling eastbound on Park Place Boulevard at the 8200 block of Park Place Boulevard. McGriff's bus was traveling westbound on Park Place Boulevard at the 8200 block of Park Place Boulevard. A white car was traveling southbound on Hartford Street. The white car failed to yield the right of way at a stop sign and made a left turn onto Park Place

6

Boulevard at the 8200 block, causing Robertson's freightliner to brake abruptly while towing a 32,000-pound trailer. While braking, Robertson's freightliner drifted into a westbound lane of travel on Park Place Boulevard, striking McGriff's bus. The collision occurred about 300 feet west of the intersection of Park Place Boulevard and Hartford Street, and the white car did not "pull[] out" onto Park Place Boulevard until after McGriff's bus had passed Hartford Road.

The Crash Report also contained statements from Robertson and McGriff. Robertson stated:

> I was driving east and the bus was traveling west. A small white car drove from Hartford Street and made a left turn in front of me. I slammed on my brakes. While I slammed on my brakes [the freightliner] drifted into the lane of the on[-]coming traffic. The front side of my [freightliner] hit the left side of the bus. The white car never stopped. I did not get a chance to see the make or model of the car.

McGriff stated: "I was driving and the [freightliner] came from the other side of the r[o]ad[] and hit the left side of my bus. I did not see any other vehicles. All I remember was being hit."

The City also attached to its combined plea to the jurisdiction and summary-judgment motion the depositions of Robertson and McGriff. In his deposition, Robertson testified that he was employed by the City, in the Solid Waste Management Department, to drive a large and heavy "commercial truck[]." His job title was Senior Refuse Truck Driver. He was tasked with picking up trash in bulk and bulk waste and taking the waste to landfills.

7

According to Robertson, he was involved in a previous incident while employed by the City during which his trailer "connected with a low hanging branch in a neighborhood," and the branch "bent the tarp arm" on the trailer. No other cars or trucks were involved in the incident. Robertson was not found at fault, and he was not disciplined because it was "a common occurrence."

Robertson further testified that on the day of the collision with McGriff's bus, Robertson had just finished his route "picking up trash." It was about 6:00 p.m. or 6:30 p.m. and "dark and gloomy" outside. It had stopped raining, but the road was wet. Robertson did not know how fast he was driving at the time of the collision, but it was "a moderate speed, . . . not too fast, not too slow."

According to Robertson, he was driving eastbound on Park Place Boulevard in the right lane of travel and a small white car "pulled out of [a] side street" in front of his freightliner. The driver of the white car made a left-hand turn and crossed into Robertson's lane of travel. The driver of the white car then slowed down in front of Robertson's freightliner. Because the driver of the white car slowed down in front of Robertson's freightliner, Robertson had to "hit the brakes," and the freightliner "jackknifed."[5] Because the trailer attached to the freightliner was "loaded," the

---

[5]     Robertson explained that instead of the trailer sliding in a straight position behind the freightliner, the "the trailer slid forward" and the freightliner and the trailer were "basically[] in an L-shape."

"weight from the load[6] . . . pushed the [freightliner]," and the freightliner slid into the eastbound left-hand lane of travel. Robertson tried to gain control of the freightliner, which continued to slide diagonally to the left. As the freightliner slid, Robertson was not sure whether it "crossed the yellow line" into "oncoming traffic." McGriff's bus, which was driving the opposite direction on the same road in the left-hand lane of travel, "got close enough for [the two vehicles] to connect." The freightliner "grazed the . . . bus" on the side in the middle section of the bus. The freightliner put "a deep scrape on the side of the bus," and the front left fender of the freightliner was damaged. The freightliner's front left headlight also broke. After the collision, McGriff pulled the bus over to the side of the road, and Robertson made a left-hand turn onto a side street to park the freightliner.

Robertson noted that he did not see the driver of the white car. And he stated that if he had not "hit [the] brakes," he would have hit the white car and it would have been a "serious accident" because the white car was "right in front of" the freightliner and "did[] [not] try to avoid getting hit." If the white car had not turned in front of the freightliner, Robertson would not have had to "hit the brakes to prevent killing whoever was in the [white] car." Because the driver of the white car could have turned into the lane of travel next to the right lane that Robertson was

---

[6]     Robertson stated that the freightliner, the trailer, and the "load" in the trailer weighed about 60,000 pounds in total.

driving in, Robertson did not anticipate that the white car was going to "get in front" of the freightliner. According to Robertson, it was not normal for someone to "just jump in front of a semi-tractor trailer . . . and slow down or [drive] at a slow speed." The driver of the white car did not stop but "kept going," and Robertson lost sight of the white car because he was trying to manage the freightliner and "avoid rolling over." According to Robertson, "[a] rollover [was] always serious." If the freightliner had rolled over, he could have been killed.

In Robertson's opinion, McGriff must have been driving at a high rate of speed, and it did not appear that the bus was stopping when the collision occurred. McGriff should have seen the sliding freightliner, but the bus "kept coming" and did not seem to slow down. To Robertson, "[i]t seem[ed] like the bus ran right into the [collision]" and "ran right into [his] sliding [freightliner]." Robertson did not see the bus until it was "[r]ight on [him]," and the freightliner was already sliding when he first saw the bus.

Robertson also testified that he went to speak to McGriff after the collision, and he asked if she was okay. McGriff was sitting in the driver's seat of the bus and "was on the phone." Robertson did not see any blood, and McGriff was not startled or crying.

According to Robertson, he was not looking at his cellular telephone and was not "on the phone" at the time of the collision. He was not driving "at a rate of speed

greater than that at which an ordinary person would have driven under the same or similar circumstances" and was paying attention to his surroundings. If he had not been paying attention then he would have "[d]estroyed the white car." Law enforcement officers did not give Robertson "a citation" when they arrived at the scene after the collision. No one at the scene told Robertson that the collision was his fault.[7] Later, a Safety Representative's Report for the City's Solid Waste Management Department determined that Robertson was not at fault. No corrective action was taken against him.

In her deposition, McGriff testified that she was driving the bus on Park Place Boulevard and there was no white car. There was no place where a "car could [have] come from." Instead, McGriff could see Robertson on his cellular telephone while he was driving. He was holding his cellular telephone in his left hand and looking down at it. McGriff thought to herself, "Why is this man holding a phone driving a [freightliner]?" (Internal quotations omitted.) McGriff then realized that Robertson's freightliner was "sliding across the road." McGriff thought, "[T]his man is getting ready to hit me head on because . . . he's not even paying attention to what he's doing." McGriff was able to see Robertson looking down at his cellular telephone because she was scanning the road from left to right as she drove the bus.

---

[7] Robertson stated that a Houston Police Department ("HPD") officer, a City investigator, and a safety representative for "Metro police" came to the scene.

After the freightliner crossed over a lane of travel, Robertson "recognized that he was losing control of the [freightliner]," and "he started turning the [steering] wheel profusely." According to McGriff, "[i]t was like he was looking down when he realized the [freightliner] . . . [had] start[ed] to skid" and Robertson "start[ed] turning the [steering] wheel to make sure he did[] [not] hit [McGriff] head on." McGriff thought that the freightliner started to skid because the road was wet. McGriff did not see any debris or obstacles in the road.

McGriff stated that the freightliner hit the bus on the driver's side, toward the front of the bus. She could not move the bus into a different lane of travel to avoid the collision because she was already driving in the right lane of travel next to the sidewalk. There were no other cars on the road at the time of the collision. McGriff was driving the bus at "a slow rate of speed," about twenty miles per hour or less, because it had been raining, the ground was wet, and she was driving in a school zone.

According to McGriff, she told her supervisor, who came to the scene after the collision, that Robertson was focused on his cellular telephone and not on driving the freightliner. McGriff thought that Robertson said he was sorry after the collision. The collision caused the side of the bus to be pushed inward, and certain windows were broken.

The City also attached to its combined plea to the jurisdiction and summary-judgment motion McGriff's answers to the City's interrogatories, in which she stated:

> She was driving a bus in the course and scope of her employment when she saw the [freightliner] driven by [Robertson] approaching her [bus] in the lanes of traffic going [in] the opposite direction. [She] was driving in the rightmost lane of traffic, and she first saw [Robertson's freightliner] in the leftmost lane of traffic from her vantage point. . . . [S]he saw [Robertson's freightliner] begin to drift into her lanes of travel. [She] attempted to stop her bus in attempts to avoid the [c]ollision, but [Robertson's freightliner] came across the center line and struck the bus she was driving.

McGriff also stated that she was driving her bus "in accordance with her training and surveying the road in fr[ont] of her." She was not using her cellular telephone. McGriff did not know "the exact distance at which she first saw [Robertson's freightliner], but between the time she first saw [it] and the [c]ollision, she had enough time to slow her bus to a stop." McGriff believed that she was driving the bus at about fifteen or twenty miles per hour before the collision with the freightliner, and she stated that she had "attempted to stop her bus to avoid the [c]ollision." McGriff also stated in her interrogatory answers that she "never saw another" car on the road "other than the [freightliner] that struck her bus."

Finally, the City attached to its combined plea to the jurisdiction and summary-judgment motion, a Department of Solid Waste Management Root Cause Analysis Form (the "Root Cause Analysis Form") related to the October 15, 2018

13

collision. The Root Cause Analysis Form stated, "not at fault" as to Robertson, and as a "[c]ause [f]actor," a box was checked next to the word "[e]nvironment."[8]

In response to the City's combined plea to the jurisdiction and summary-judgment motion, McGriff asserted that the TTCA waived governmental immunity for the City. According to McGriff, the TTCA waived the City's governmental immunity in a suit arising from the negligent operation or use of a motor-driven vehicle by a governmental employee acting in the scope of his employment if the governmental employee would be liable to McGriff under Texas law. And here the City had not established as a matter of law that Robertson—the City employee—would not personally liable to McGriff under Texas law. Thus, because the evidence was sufficient to show that Robertson was negligent in his operation or use of the freightliner and the City had not met its burden of establishing the "sudden emergency" defense, McGriff requested that the trial court deny the City's combined plea to the jurisdiction and summary-judgment motion.

McGriff attached to her response a copy of her deposition and the deposition of Robertson as well as copies of the Crash Report and the Root Cause Analysis

---

[8] The City attached other exhibits to its combined plea to the jurisdiction and summary-judgment motion, including a copy of a Google map and a "Texas Peace Officer's Crash Report – Code Sheet" as well as a videotape recording from the body camera of an HPD officer at the scene after the collision and an audio recording of McGriff's statement to Metropolitan Transit Authority of Harris County a few days after the collision.

Form related to the October 15, 2018 collision. McGriff also attached a photograph of McGriff's bus and the videotape recording from the body camera of an HPD officer at the scene after the collision.

In its reply to McGriff's response, the City asserted that McGriff "present[ed] no evidence to overcome [the City's] sudden emergency" defense. (Emphasis omitted.)

The trial court denied the City's combined plea to the jurisdiction and summary-judgment motion.

### Standard of Review

Subject-matter jurisdiction is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Several different procedural vehicles may be used to challenge a trial court's subject-matter jurisdiction, including a plea to the jurisdiction and a summary-judgment motion. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Amboree v. Bonton*, 575 S.W.3d 38, 42–43 (Tex. App.—Houston [1st Dist.] 2019, no pet.). A governmental unit may raise the affirmative defense of sovereign immunity or governmental immunity and challenge the trial court's jurisdiction "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Clark*, 544 S.W.3d at 770. We review a trial court's ruling on a plea to the jurisdiction and a summary-judgment motion de novo. *See Tex. Mun.*

15

*Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Jersey Village v. Killough*, No. 01-20-00823-CV, 2021 WL 5903988, at *3 (Tex. App.—Houston [1st Dist.] Dec. 14, 2021, no pet.) (mem. op.).

Review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). . . . By requiring the [S]tate to meet the summary judgment standard of proof . . . , we protect the plaintiff[] from having to put on [her] case simply to establish jurisdiction." (internal quotations and citations omitted)); *see also* TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). And a court may consider evidence as necessary to resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject[-]matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226.

16

We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. If the governmental unit meets its burden to establish that the trial court lacks jurisdiction, the non-movant—here, the plaintiff—is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue about jurisdiction, the plea to the jurisdiction cannot be granted, and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea to the jurisdiction must be determined as a matter of law. *Id.* at 228; *see also Garcia*, 372 S.W.3d at 635.

## Governmental Immunity

In its sole issue, the City argues that the trial court erred in denying its combined plea to the jurisdiction and summary-judgment motion because the trial court lacks subject-matter jurisdiction over McGriff's suit. The City asserts that it is entitled to governmental immunity, and the TTCA only waives its immunity for personal injuries proximately caused by the negligence of a governmental employee acting in the scope of his employment, if the injuries "arise[] from the operation or use of a motor-driven vehicle" and if the governmental employee "would be personally liable to the [plaintiff] according to Texas law." (Internal quotations omitted.) *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). And here,

17

Robertson, the governmental employee, would not be personally liable to McGriff for negligence under Texas law.

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24. Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24; *see also Odutayo v. City of Houston*, No. 01-12-00132-CV, 2013 WL 1718334, at *2 n.8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.). We interpret statutory waivers of sovereign immunity and governmental immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous. *See LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.034. Without an express waiver of sovereign immunity or governmental immunity, courts do not have

18

subject-matter jurisdiction over suits against the State or its political subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Miranda*, 133 S.W.3d at 224–25; *see also Harris Cnty. v. S. Cnty. Mut. Ins. Co.*, No. 01-13-00870-CV, 2014 WL 4219472, at \*2 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.) ("Governmental immunity from suit deprives a trial court of subject-matter jurisdiction.").

The TTCA provides a limited waiver of immunity for certain suits against governmental units. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109; *Garcia*, 253 S.W.3d at 655; *City of Dallas v. Hillis*, 308 S.W.3d 526, 530 (Tex. App.—Dallas Mar. 30, 2010, pet. denied). The City is a governmental unit protected by governmental immunity, absent waiver. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at \*6 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op.). Relevant here, the TTCA waives a governmental unit's immunity for personal injuries proximately caused by the negligence of a governmental employee, acting in the scope of his employment, if the injuries arise from the operation or use of a motor-driven vehicle and if the governmental employee would be personally liable to the plaintiff under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1); *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 (Tex. 2022); *Hinojosa v. Metro. Transit Auth. of Harris Cnty.*, No. 01-17-00824-CV, 2018 WL

19

4131890, at *2 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 488 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

McGriff has alleged that she sustained personal injuries as a result of the negligence of Robertson—a governmental employee acting in the scope of his employment with the City—and her injuries arose from the operation or use of a motor-driven vehicle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The City, on the other hand, argues that the TTCA does not waive its governmental immunity because the governmental employee—Robertson—would not be personally liable to McGriff—the plaintiff—under Texas law. *See id.* According to the City, the "sudden emergency" defense conclusively negates McGriff's ability to demonstrate any breach of a duty by Robertson—a necessary element of McGriff's negligence claim. (Internal quotations omitted.) *See DeLeon v. Pickens*, 933 S.W.2d 286, 293 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) ("[T]he only purpose of the sudden emergency defense doctrine is to relieve a party from the consequences of his conduct which might otherwise be considered negligent."); *see also Benham v. Lynch*, No. 04-09-00606-CV, 2011 WL 381665, at *6 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) (mem. op.) (defendant not liable to plaintiff for negligence if fact finder found that sudden emergency resulted in defendant rear-ending plaintiff's car).

20

A "sudden emergency" exists when (1) an emergency situation arises suddenly and unexpectedly, (2) the emergency situation was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry, and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances. *See Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 n.4 (Tex. 2005); *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Sudden emergency" defense is an inferential rebuttal.[9] *See Dillard*, 157 S.W.3d at 433–34. Inferential rebuttals are defensive theories that operate to rebut an essential element of a plaintiff's case by proof of other facts. *See Archer Grp., LLC v. City of Anahuac*, 472 S.W.3d 370, 376 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Villanova v. Fed. Deposit Ins. Corp.*, 511 S.W.3d 88, 99 (Tex. App.—El Paso 2014, no pet.); *see also Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."); *Gómez v. Cooke*, No.

---

[9]    Inferential rebuttal defenses are distinct from affirmative defenses in that an inferential rebuttal, as the name implies, rebuts part of the plaintiff's cause of action, while an affirmative defense relieves the defendant of liability even if all the elements of a plaintiff's cause of action are established. *See Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692, 699–700 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

14-15-00010-CV, 2016 WL 836781, at *2 (Tex. App.—Houston [14th Dist.] Mar. 3, 2016, no pet.) (mem. op.) ("A defendant asserting an inferential-rebuttal defense seeks to establish the truth of a theory that is contrary to or inconsistent with the plaintiff's theory, thereby disproving a factual element of the plaintiff's claim."); *Morales v. Dougherty*, No. 12-06-00416-CV, 2008 WL 2930245, at *3 (Tex. App.— Tyler July 31, 2008, no pet.) (mem. op.). The City, as the party relying on the inferential rebuttal defense of "sudden emergency" in its combined plea to the jurisdiction and summary-judgment motion bore the burden of producing sufficient evidence to prove its "sudden emergency" inferential-rebuttal defense as a matter of law. *See Cooke*, 2016 WL 836781, at *2; *Villanova*, 511 S.W.3d at 99 (defendant not entitled to summary judgment on its inferential rebuttal defense because it failed to conclusively prove its defense as matter of law).

In its combined plea to the jurisdiction and summary-judgment motion, the City asserted that at about 6:00 p.m. on October 15, 2018, Robertson was driving the freightliner and trailer eastbound on Park Place Boulevard, in the right lane of the two eastbound lanes of travel. McGriff was driving a bus westbound on Park Place Boulevard, and a driver of a white car was stopped at a stop sign on Hartford Street, which intersected with Park Place Boulevard. Before McGriff passed the intersection of Hartford Street and Park Place Boulevard, the driver of the white car made a sudden left turn across both westbound lanes of travel and one eastbound

22

lane of travel on Park Place Boulevard, "cutting in front" of Robertson's freightliner, with its fully-loaded trailer. The driver of the white car then slowed down in front of Robertson. Robertson was forced to brake to "avoid destroying the white car." (Internal quotations omitted.) According to the City, "[t]he white car would have been crushed had Robertson not been paying attention and driving with due caution."

Because the road was wet, when Robertson braked, the freightliner and trailer "jackknife[d]," "fold[ing] at the hitch that connect[ed] the trailer to the [freightliner]," and began sliding into the left eastbound lane of travel on Park Place Boulevard and toward "the yellow line dividing east and west bound traffic." McGriff's bus was approaching in the opposite direction and did not slow down. Robertson "turn[ed] his wheels and gain[ed] control of [the freightliner] and trailer to avoid hitting McGriff's bus head on." The law enforcement crash report concluded that the collision was caused by the driver of the white car, and "no fault [was found] on the part of Robertson." Robertson's supervisor determined that Robertson "was not at fault and [had] exercised due caution." According to the City, it had demonstrated as a matter of law that an emergency situation arose suddenly and unexpectedly and was not caused by any negligent or wrongful action by Robertson; the collision was caused by the actions of the driver in the white car, and Robertson "reacted in the safest way possible without time for deliberation."

The City attached to its combined plea to the jurisdiction and summary-judgment motion a copy of the Crash Report and the Root Cause Analysis Form as well as the deposition of Robertson. The Crash Report stated that Robertson's freightliner was traveling eastbound on Park Place Boulevard at the 8200 block of Park Place Boulevard, while McGriff's bus was traveling westbound on Park Place Boulevard at the 8200 block of Park Place Boulevard. A white car was traveling southbound on Hartford Street. The white car failed to yield the right of way at a stop sign and made a left turn onto Park Place Boulevard at the 8200 block, causing Robertson's freightliner to brake abruptly while towing a 32,000-pound trailer. While braking, Robertson's freightliner drifted into a westbound lane of travel on Park Place Boulevard, striking McGriff's bus. The collision occurred about 300 feet west of the intersection of Park Place Boulevard and Hartford Street, and the white car did not "pull[] out" onto Park Place Boulevard until after McGriff's bus had passed Hartford Road.

The Crash Report also contained statement from Robertson, in which he stated:

> I was driving east and the bus was traveling west. A small white car drove from Hartford Street and made a left turn in front of me. I slammed on my brakes. While I slammed on my brakes [the freightliner] drifted into the lane of the on[-]coming traffic. The front side of my [freightliner] hit the left side of the bus. The white car never stopped. I did not get a chance to see the make or model of the car.

24

The Root Cause Analysis Form related to the October 15, 2018 collision stated, "not at fault" as to Robertson, and as a "[c]ause [f]actor," a box was checked next to the word "[e]nvironment."

In his deposition, Robertson testified that on the day of the collision with McGriff's bus, Robertson had just finished his route "picking up trash." It was about 6:00 p.m. or 6:30 p.m. and "dark and gloomy" outside. It had stopped raining, but the road was wet. Robertson did not know how fast he was driving at the time of the collision, but it was "a moderate speed, . . . not too fast, not too slow."

According to Robertson, he was driving eastbound on Park Place Boulevard in the right lane of travel, and a small white car "pulled out of [a] side street" in front of his freightliner. The driver of the white car made a left-hand turn and crossed into Robertson's lane of travel. The driver of the white car then slowed down in front of Robertson's freightliner. Because the driver of the white car slowed down in front of Robertson's freightliner, Robertson had to "hit the brakes," and the freightliner "jackknifed."[10] Because the trailer attached to the freightliner was "loaded," the "weight from the load[11] . . . pushed the [freightliner]," and the freightliner slid into the left-hand lane of travel. Robertson tried to gain control of the freightliner, which

---

[10]    Robertson explained that instead of the trailer sliding in a straight position behind the freightliner, the "the trailer slid forward" and the freightliner and the trailer were "basically[] in an L-shape."

[11]    Robertson stated that the freightliner, the trailer, and the "load" in the trailer weighed about 60,000 pounds in total.

continued to slide diagonally to the left.  As the freightliner slid, Robertson was not sure whether it "crossed the yellow line" into "oncoming traffic."  McGriff's bus, which was driving the opposite direction on the same road in the left-hand lane of travel, "got close enough for [the two vehicles] to connect."  The freightliner "grazed the . . . bus" on the side in the middle section of the bus.

Robertson stated that if he had not "hit [the] brakes," he would have hit the white car and it would have been a "serious accident" because the white car was "right in front of" the freightliner and "did[] [not] try to avoid getting hit."  If the white car had not turned in front of the freightliner, Robertson would not have had to "hit the brakes to prevent killing whoever was in the [white] car."  Because the driver of the white car could have turned into the lane of travel next to the right lane that Robertson was driving in, Robertson did not anticipate that the white car was going to "get in front" of the freightliner.  According to Robertson, it is not normal for someone to "just jump in front of a semi-tractor trailer . . . and slow down or [drive] at a slow speed."  The driver of the white car did not stop but "kept going," and Robertson lost sight of the white car because he was trying to manage the freightliner and "avoid rolling over."  According to Robertson, "[a] rollover [was] always serious."  If the freightliner had rolled over, he could have been killed.

In Robertson's opinion, McGriff must have been driving at a high rate of speed, and it did not appear that the bus was stopping when the collision occurred.

26

McGriff should have seen the sliding freightliner, but the bus "kept coming" and did not seem to slow down. To Robertson, "[i]t seem[ed] like the bus ran right into the [collision]" and "ran right into [his] sliding [freightliner]." Robertson did not see the bus until it was "[r]ight on [him]," and the freightliner was already sliding when he first saw the bus.

According to Robertson, he was not looking at his cellular telephone and was not "on the phone" at the time of the collision. He was not driving "at a rate of speed greater than that at which an ordinary person would have driven under the same or similar circumstances" and was paying attention to his surroundings. If he had not been paying attention then he would have "[d]estroyed the white car." Law enforcement officers did not give Robertson "a citation" when they arrived at the scene after the collision. No one at the scene told Robertson that the collision was his fault.[12] A Safety Representative's Report for the City's Solid Waste Management Department determined that Robertson was not at fault. No corrective action was taken against him.

Notably though, the City also attached McGriff's deposition to its combined plea to the jurisdiction and summary-judgment response.[13] In her deposition,

---

[12]  Robertson stated that a HPD officer, a City investigator, and a safety representative for "Metro police" came to the scene.

[13]  The City complains about the trial court's consideration of McGriff's deposition testimony in ruling on the City's combined plea to the jurisdiction and summary-judgment motion, but the City, having attached McGriff's deposition to

McGriff testified she was driving the bus on Park Place Boulevard and *there was no white car.* There was no place where a "car could [have] come from." Further, there were no other cars on the road at the time of the collision.[14] Instead, McGriff saw Robertson looking at his cellular telephone as he was driving. He was holding his cellular telephone in his left hand and looking down at it. McGriff thought to herself, "Why is this man holding a phone driving a [freightliner]?" (Internal quotations omitted.) McGriff then realized that Robertson's freightliner was "sliding across the road." McGriff thought, "[T]his man is getting ready to hit me head on because . . . he's not even paying attention to what he's doing." McGriff was able

---

its motion for consideration by the trial court, cannot now complain that the trial court considered evidence the City provided. *See In re Tex. Farm Bur. Mut. Ins. Co.*, No. 01-19-00742-CV, 2020 WL 573249, at *5 (Tex. App.—Houston [1st Dist.] Feb. 6, 2020, orig. proceeding) (mem. op.) (discussing invited error doctrine); *cf. Anderson v. State*, Nos. 05-18-01303-CR, 05-18-01304-CR, 2020 WL 219310, at *4 (Tex. App.—Dallas Jan. 15, 2020, no pet.) (mem. op., not designated for publication) (appellant unable to complain on appeal about evidence he elicited at trial). Further, to the extent that the City objected to the evidence that McGriff only attached to her response to its combined plea to the jurisdiction and summary-judgment motion, McGriff attached one piece of evidence—a photograph of the bus—that had not already been attached by the City to its combined plea to the jurisdiction and summary-judgment motion, and the City has not raised an issue in its brief complaining that the trial court erred in overruling its objections to McGriff's evidence. *See* Tex. R. App. P. 38.1(f), (i); *see also Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (concluding failing to raise issue on appeal waives error); *TPG (Post Oak) Acquisition, LLC v. Greystone Multi-Family Builders, Inc.*, No. 01-18-00396-CV, 2021 WL 3870130, at *1 n.1 (Tex. App.—Houston [1st Dist.] Aug. 31, 2021, no pet.) (mem. op.).

[14] McGriff also stated in her interrogatory answers, a copy of which the City attached to its combined plea to the jurisdiction and summary-judgment motion, that she "never saw another" car on the road "other than the [freightliner] that struck her bus."

to see Robertson looking down at his cellular telephone because she was scanning the road from left to right as she drove the bus.

McGriff further testified that after the freightliner crossed over a lane of travel, Robertson "recognized that he was losing control of the [freightliner]," and "he started turning the [steering] wheel profusely." According to McGriff, "[i]t was like he was looking down [at his cellular telephone] when he realized the [freightliner] . . . [had] start[ed] to skid" and then Robertson "start[ed] turning the [steering] wheel to make sure he did[] [not] hit [her] head on." McGriff did not see any debris or obstacles in the road.

McGriff stated that the freightliner hit the bus on the driver's side, toward the front of the bus. She could not move the bus into a different lane of travel to avoid the collision because she was already driving in the right lane of travel next to the sidewalk. McGriff was driving the bus at "a slow rate of speed," about twenty miles per hour or less, because it had been raining, the ground was wet, and she was in a school zone.

According to McGriff, she told her supervisor, who came to the scene after the collision, that Robertson was focused on his cellular telephone and not on driving. McGriff thought that Robertson said he was sorry after the collision.

The "sudden emergency" defense only applies if the sudden emergency was not proximately caused by the negligence of the person whose conduct is under

29

inquiry—in this case, Robertson. *See Dillard*, 157 S.W.3d at 432 n.4; *Gregory v. Chohan*, 615 S.W.3d 277, 294 (Tex. App.—Dallas 2020, pet. granted); *see also Kilgore Mech., LLC v. Shafiee*, No. 14-10-00295-CV, 2011 WL 1849095, at *3 (Tex. App.—Houston [14th Dist.] May 12, 2011, no pet.) (mem. op.) (trial court did not need to include sudden-emergency instruction in jury charge where defendant's actions prior to emergency were negligent); *DeLeon*, 933 S.W.2d at 294 (sudden emergency defense not applicable in cases where driver deemed negligent for failing to keep proper look out because in such instances, "the alleged 'emergency' [was] created by the [driver's] conduct"). Stated differently, the "sudden emergency" defense does not apply if the sudden emergency was proximately caused by the negligence of the person whose conduct is under inquiry—in this case, Robertson.

The City, as the party relying on the inferential rebuttal defense of "sudden emergency," had the burden, in connection with its combined plea to the jurisdiction and summary-judgment motion, to produce sufficient evidence establishing its "sudden emergency" inferential-rebuttal defense as a matter of law, including conclusively establishing that the sudden emergency was not proximately caused by Robertson's negligence. *See Cooke*, 2016 WL 836781, at *2; *Villanova*, 511 S.W.3d at 99 (defendant not entitled to summary judgment on its inferential rebuttal defense because it failed to conclusively prove its defense as matter of law). Here, we cannot say, based on the evidence before the trial court, that the City conclusively

30

established that the sudden emergency was not proximately caused by Robertson's negligence.[15] *See Jordan*, 222 S.W.3d at 847 ("[T]he elements of the sudden emergency defense [are] . . . (1) an emergency situation arose suddenly and unexpectedly; (2) the emergency situation was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry; and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances."); *see also Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 270 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (conflicting evidence creates fact issue precluding summary judgment).

Accordingly, we hold that the trial court did not err in denying the City's combined plea to the jurisdiction and summary-judgment motion. *See, e.g.*, *Morales v. Craig*, No. 3-99-00553-CV, 2001 WL 617187, at *6 (Tex. App.—Austin June 7, 2001, no pet.) (not designated for publication) (where defendant could not conclusively establish elements of "sudden emergency" defense, summary judgment could not be granted on that basis).

---

[15] Because we have concluded that the City did not conclusively establish that the sudden emergency was not proximately caused by Robertson's negligence, we need not address whether the City conclusively established the other elements of its "sudden emergency" defense. *See* TEX. R. APP. P. 47.1; *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We overrule the City's sole issue.

## Conclusion

We affirm the order of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Rivas-Molloy.